UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSABEMI-YE ADEDAPOIDLE-TYEHIMBA,<br><br>    Plaintiff,<br><br>    v.<br><br>CRUNCH, LLC, et al.,<br><br>    Defendants. | Case No. 13-cv-00225-WHO<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND; DENYING DEFENDANTS' MOTION TO STRIKE; AND DENYING PLAINTIFF'S MOTION FOR EQUITABLE TOLLING**<br><br>Re: Dkt. Nos. 43, 45 |

**INTRODUCTION**

Plaintiff Osabemi-Ye Adedapoidle-Tyehimba alleges that he worked as a non-exempt personal trainer in a fitness club operated by Defendants Crunch, LLC, New Evolution Ventures, LLC ("NEV"), and New Evolution Fitness Company, LLC ("NEFC") (collectively, "Defendants"). His Second Amended Complaint ("SAC") alleges that Defendants violated the Fair Labor Standards Act ("FLSA") and various state laws by requiring employees to work "off the clock," failing to reimburse for necessary business expenses, and failing to provide meal and rest breaks. Mr. Adedapoidle-Tyehimba seeks to represent a nationwide collective action pursuant to the FLSA.

Defendants NEV and NEFC move to dismiss the FLSA claim for failure to state a claim, on the grounds that Mr. Adedapoidle-Tyehimba does not adequately plead that NEV and NEFC are his employers, joint employers, or alter-egos of his "direct employer," Defendant Crunch, LLC. In addition, all three Defendants move to strike Mr. Adedapoidle-Tyehimba's proposed FLSA class definition on the theory that the definition, which includes all of Defendants' non-exempt hourly employees, is overbroad as it includes persons unrelated to the allegations in the

SAC. Also before the Court is Mr. Adedapoidle-Tyehimba's motion for equitable tolling of the FLSA claims of potential members of his proposed FLSA collective action.

As described below, the Court grants the motion to dismiss the FLSA claim against NEV and NEFC, with leave to amend, and denies Defendants' motion to strike. The Court denies Mr. Adedapoidle-Tyehimba's motion for equitable tolling.

**BACKGROUND**

Mr. Adedapoidle-Tyehimba filed a First Amended Complaint ("FAC") on February 7, 2013. Dkt. No. 12. The FAC alleged the following causes of action:

1) failure to pay minimum wages and overtime wages as required by the FLSA, 29 U.S.C. §§ 206, 207;
2) failure to pay wages and overtime wages as required by California Labor Code Sections 226, 226.6, 1174, 1194, 1197, and 1199;
3) failure to provide meal periods as required by California Labor Code Sections 226, 512, 516;
4) failure to provide rest periods as required by California Labor Code Sections 226.7;
5) failure to reimburse for necessary work-related expenses as required by California Labor Code Section 2802(c);
6) failure to provide and maintain accurate wage statements in violation of California Labor Code Sections 226, 226.3, 1174 and 1174.5;
7) failure to pay all wages due on termination in violation of California Labor Code Sections 201 and 202; and
8) violations of California Business and Professions Code Sections 17200, *et seq*.

On May 3, 2013, the Court stayed the state law causes of action (causes of action 2-8) pending developments in a class action lawsuit filed against Defendant Crunch, LLC on April 4, 2012 in San Francisco Superior Court, *Rothberg v. Crunch LLC*, Case No. CGC-12-519740, alleging the same California wage and hour claims stated in this action. Dkt. No. 39 at 4-7.[1]

---

[1] Accordingly, only the FLSA claim is at issue in the Motion to Dismiss.

1  The Court also granted Defendants' motion to dismiss the FAC for failure to state a claim
2  on the grounds that the complaint failed to allege which of the three Defendants was Mr.
3  Adedapoidle-Tyehimba's employer, and instead lumped all three entities together as "Crunch." *Id.*
4  at 7-8. The Court explained that

> The FAC does not contain any facts in support of the allegations that defendants are "joint employers," "agents" or "alter egos." While plaintiff need not plead detailed allegations regarding the relationship between the defendants, presumably plaintiff has some factual basis for seeking to hold each of the defendants liable.

*Id*. at 7. The Court granted Mr. Adedapoidle-Tyehimba leave to amend "to clarify and amplify the allegations regarding the three defendants." *Id*.

On May 10, 2013, Mr. Adedapoidle-Tyehimba filed the SAC. Dkt. No. 40. The SAC re-alleges the eight causes of action alleged in the FAC, and adds new allegations regarding the relationships between the parties. *Id*. ¶ 24. Also on May 10, 2013, at a Case Management Conference, the parties agreed to stay discovery on the FLSA claim pending finalization of the settlement pending in *Rothberg,* the related state court proceeding. Dkt. No. 41.

## DISCUSSION

### I. Motion to dismiss FLSA claim against Defendants New Evolution Ventures, LLC and New Evolution Fitness, LLC for failure to state a claim

NEV and NEFC move to dismiss the FLSA claim for failure to state a claim, arguing that Mr. Adedapoidle-Tyehimba concedes that they are not his direct employers, and has not adequately pleaded a basis for finding them liable as his joint employers or as alter-egos of his direct employer, Crunch, LLC.

#### a. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

3

omitted). This standard is not akin to a probability requirement; there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### b. Allegations regarding joint employment and alter ego

In ruling on Defendants' motion to dismiss the FAC in May 2013, the Court noted that Mr. Adedapoidle-Tyehimba's "imprecise and conclusory" allegations did "not contain any facts in support of the allegations that defendants are 'joint employers,' 'agents' or 'alter egos.'" Dkt. No. 39, at 7. Mr. Adedapoidle-Tyehimba's repeats those "imprecise and conclusory" allegations in the SAC, supplemented with one new paragraph. However, Mr. Adedapoidle-Tyehimba's supplemental allegations do not cure the pleading deficiencies as to NEV and NEFC.

The SAC alleges that Crunch, LLC was Mr. Adedapoidle-Tyehimba's "direct employer." Dkt. No 40 at 8. But the SAC asserts, as did the FAC, that NEV and NEFC are "joint-employers of Plaintiff and Class Members" and that "Plaintiff and Class Members have, directly or indirectly, performed services to each of defendant, and to the mutual benefit of all defendants." SAC ¶ 25; FAC ¶ 24. The SAC also re-alleges that "each defendant knew or should have known about, and authorized, ratified, adopted, approved, controlled and abetted the conduct of all other defendants." SAC ¶ 25; FAC ¶ 24.

Mr. Adedapoidle-Tyehimba's alter ego allegations consist of one paragraph, also alleged in the FAC, that there exists

> a unity of interest and ownership between each defendant and Defendant Crunch LLC such that any separateness and individuality between them have ceased, and they are the alter-egos of Defendant

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> Crunch LLC. Adherence to the fiction of the separate existence of said defendants and Defendant Crunch LLC would permit abuse of any corporate privilege, sanction fraud and promote injustice.

SAC ¶ 26; FAC ¶ 25. As noted, these joint employer and alter ego allegations are *identical* to those previously stated in the FAC. *See* FAC ¶¶ 24-25.

Presumably in response to the Court's admonition that the FAC lacked facts supporting the joint employer and alter ago allegations, the SAC adds the following allegations:

- that Crunch fitness clubs are "co-owned" by NEV;
- that NEV "focuses on the acquisition, development, management and operation of fitness;"
- that NEV "and/or"[2] NEFC, "through their co-ownership with Defendant Crunch LLC, manage and oversee the operations of Defendant Crunch LLC;" and,
- that all Defendants "share a common management team, including officers, and/or directors and senior management level employees."

SAC ¶ 24.

### c. Discussion regarding joint employment and alter allegations

Mr. Adedapoidle-Tyehimba contends that the new allegations in paragraph 24 of the SAC, "and all reasonable inferences stemming from those allegations construed in Plaintiff's favor," adequately allege that Defendants NEV and NEFC may be liable as joint employers. Dkt. No. 47 at 4. He further argues that the SAC "demonstrates that Defendants manage and control the operations of Crunch, LLC, use the same employees, and share officers and directors" such that he has adequately pleaded NEV's and NEFC's liability as alter egos. *Id*. at 5. For the reasons stated below, the Court disagrees.

A defendant must be an "employer" of the plaintiff in order to be liable under the FLSA. *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1468 (9th Cir. 1983)

---

[2] Mr. Adedapoidle-Tyehimba alleges that "Plaintiff is informed and believes and, based thereon, alleges that Defendants New Evolution Ventures LLC ***and/or*** New Evolution Fitness Company LLC through their co-ownership with Defendant Crunch LLC manage and oversee the operations of Defendant Crunch LLC, Plaintiff's direct employer." SAC ¶ 24 (emphasis added). Such an admittedly speculative allegation does nothing to further a claim against either NEV or NEFC.

*disapproved of, on other grounds, by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985). "Two or more employers may jointly employ an employee and be individually liable under the FLSA." *Maddock v. KB Homes, Inc*., 631 F.Supp.2d 1226, 1232 (C.D. Cal. 2007). Whether an entity is a "joint employer" under the FLSA is a question of law. *Torres-Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997).

The Supreme Court has explained that the "economic reality" of an employment situation should determine whether an employee-employer relationship exists under the FLSA. *Goldberg v. Whitaker House Coop.,* 366 U.S. 28, 33 (1961). The FLSA itself does not specifically address the concept of joint-employers. However, regulations promulgated by the Department of Labor provide guidance for when joint employment may exist. *See Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1112 n.4 (9th Cir. 2001) ("We give deference to the DOL's regulations interpreting the FLSA"). Those regulations provide that

> Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
>
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b). Accordingly, "Subsection 791.2(b)(3) tells us that joint employment will generally be considered to exist when 1) the employers are not "completely disassociated" with respect to the employment of the individuals and 2) where one employer is controlled by another or the employers are under common control." *Chao v. A-One Med. Servs., Inc.,* 346 F.3d 908, 918 (9th Cir. 2003).

6

1    In turn, the Ninth Circuit, mindful of the Department of Labor regulations, has identified a four factor "economic reality" test to aid in the determination of the employee-employer relationship. *Bonnette*, 704 F.2d at 1470. Those factors are: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.*; *see also Moreau v. Air France*, 356 F.3d 942, 946-47 (9th Cir. 2004) (reaffirming applicability of *Bonnette* factors). While these factors are helpful and relevant to the joint employer analysis, the "ultimate determination must be based upon the circumstances of the whole activity." *Bonnette*, 704 F.2d at 1470 (citation and internal punctuation omitted).

In *Maddock*, 631 F.Supp.2d at 1234, the court applied the *Bonnette* factors and held that the defendant, KB Home, a nationwide seller of homes in community developments, was not a joint employer with its California subsidiary, KB Home Greater Los Angeles, Inc., the plaintiff's direct employer, and thus not liable under the FLSA. It was not sufficient that KB Home maintained a database of information about KB Home Greater Los Angeles, Inc.'s employees and provided payroll services to KB Home Greater Los Angeles, Inc. *Id.* The court found it more significant to the joint employer analysis that the plaintiff failed to show that KB Home controlled the plaintiff's employment conditions or exercised any control over the nature of the plaintiff's work. *Id.* at 1236.

In contrast, in *Espenscheid v. DirectSat USA, LLC*, 09-CV-625-BBC, 2011 WL 10069108 (W.D. Wis., Apr. 11, 2011), the defendant was a joint employer for purposes of FLSA liability where, among other responsibilities, the defendant provided all of the direct employer's human resources services, prepared employee handbooks and policy booklets governing day-to-day aspects of employment, implemented employee discipline, recruiting, hiring and termination decisions, coordinated and provided curriculum for the weekly and biweekly meetings, and provided training to employees.

Here, Mr. Adedapoidle-Tyehimba has failed to allege facts sufficient to hold NEV and NEFC liable as his joint employers. As the Court previously noted, the allegations in paragraph

25 of the SAC (identical to the allegations in paragraph 24 of the FAC) are imprecise and conclusory.  The supplemental allegations in paragraph 25 of the SAC do not cure these deficiencies.  Regarding NEV, the allegation that it focuses on "fitness clubs" says nothing about its relationship with Crunch, LLC or with Mr. Adedapoidle-Tyehimba.  That leaves the allegation that NEV "co-owns" the fitness club where Mr. Adedapoidle-Tyehimba worked, that it perhaps managed and oversaw Crunch, LLC's operations, and that it shares "a common management team, including officers, and/or directors and senior management level employees" with the other Defendants.  *See* SAC ¶ 24 ("Defendants New Evolution Ventures LLC *and/or* New Evolution Fitness Company LLC through their co-ownership with Defendant Crunch LLC manage and oversee the operations of Defendant Crunch LLC, Plaintiff's direct employer.") (emphasis added).  The allegations as to NEFC are even thinner, limited to the allegation that it perhaps co-owned, managed and oversaw Crunch, LLC's operations, and that it shares a common management team with the other Defendants.  *Id.*

The allegations as to NEV and NEFC lack sufficient facts to hold them liable under the FLSA.  Even assuming that NEV and NEFC co-owned Crunch, LLC and played some role in the management or oversight of Crunch, LLC's operations, Mr. Adedapoidle-Tyehimba must still plead *facts* addressing the economic reality of his relationship to NEV or NEFC, for example indicating that they in any way controlled his employment conditions or the nature of his work. He does not.  A mere allegation that a defendant co-owns the business where the plaintiff works does not, without more, establish the economic reality of an employer-employee relationship for purpose of the FLSA.  Bare allegations that a defendant managed or oversaw a direct employer's operations are likewise insufficient.

Mr. Adedapoidle-Tyehimba's alter ego allegations fare no better.  The conclusory assertion, without any factual support, that any separation between the Defendants has "ceased" such that they should not be treated as separate entities, is insufficient to plead alter ago liability. *See High v. Choice Mfg. Co.*, 11-cv-5478 EMC, 2012 WL 3025922, *4 (N.D. Cal. July 24, 2012) ("[t]he only real allegation on alter ego is that Mr. Masi is the sole shareholder and president of Choice but that fact by itself is not enough to give rise to a prima facie case of alter ego"); *Leek v.*

8

*Cooper*, 194 Cal. App. 4th 399, 415 (2011) ("An allegation that a person owns all of the corporate stock and makes all of the management decisions is insufficient to cause the court to disregard the corporate entity."). Rather, to state an alter ego claim, Mr. Adedapoidle-Tyehimba must plead facts evidencing "1) such a unity of interest and ownership between the corporation and its equitable owner that no separation actually exists, and (2) an inequitable result if the acts in question are treated as those of the corporation alone." *Leek*, 194 Cal. App. 4th at 417. Mr. Adedapoidle-Tyehimba has not pleaded any facts showing such a unity of interest and ownership between Crunch, LLC and either NEV or NEFC such that no separation exists. Moreover, Mr. Adedapoidle-Tyehimba has not pleaded any facts showing an inequitable result if the alleged acts are treated as those of Crunch, LLC alone.

For these reasons, the SAC fails to state a FLSA claim against NEV and NEFC under Rule 12(b)(6).

## II. Defendants' motion to strike FLSA class definition

Defendants move to strike Mr. Adedapoidle-Tyehimba's FLSA class definition, arguing that the asserted definition includes employees "in positions that have nothing to do with the allegations of fact made in Plaintiff's SAC." Dkt. No. 43 at 7. For the reasons described below, the Court denies the motion to strike.

### a. Legal standard

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a motion to strike under Rule 12(f) is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing of those issues before trial. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). "As with motions to dismiss, when ruling on a motion to strike, the Court takes the plaintiff's allegations as true and must liberally construe the complaint in the light most favorable to the plaintiff." *Stearns v. Select Comfort Retail Corp.*, 763 F.Supp.2d 1128, 1140 (N.D. Cal. 2010) (citation omitted). Motions to strike "are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal

9

practice." *Rosales v. Citibank*, 133 F.Supp.2d 1177, 1180 (N.D. Cal. 2001). In most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F.Supp.2d 1048, 1057 (N.D. Cal. 2004).

### b. Allegations regarding Mr. Adedapoidle-Tyehimba's proposed FLSA class

Mr. Adedapoidle-Tyehimba alleges that he was employed by Crunch, LLC as a "personal trainer to perform personal fitness training and to sell personal training packages" and was paid on an hourly basis, supplemented with performance-based commission. SAC ¶ 5. He alleges that he was required, without compensation, to attend certification and continuing education programs "off-premise" and to study for certification and continuing education exams. *Id.* ¶ 7. Mr. Adedapoidle-Tyehimba further alleges that he was required to work "off the clock" designing training programs specific to individual gym members, but was paid only for the time spent on actual training sessions. *Id.* Finally, Mr. Adedapoidle-Tyehimba alleges that he was required to attend company meetings but was not paid for the travel time to and from those meetings. *Id.* Mr. Adedapoidle-Tyehimba seeks to represent a class of FLSA plaintiffs defined as:

> Plaintiff and all current and former non-exempt hourly employees who worked for Defendants in the United States at any time from three years preceding the filing of the complaint and continuing through entry of judgment.

SAC ¶ 3.

Defendants contend that Mr. Adedapoidle-Tyehimba's claims "pertain exclusively to personal trainers . . . paid on [sic] for time in training sessions only and not time outside training sessions," but his proposed FLSA class includes employees "in positions that have nothing to do with the allegations of fact made in Plaintiff's SAC." Dkt. No. 43 at 7. Defendants thus assert that Mr. Adedapoidle-Tyehimba's FLSA class definition should be stricken and, "[i]f Plaintiff so desires, he should re-pled [sic] a Class to fit (1) persons employed by his employer (Crunch LLC), and (2) persons in the position exclusively described by the balance of his pleading (trainers, alleged to have been compensated only for training sessions, and forced to work off the clock at all other times), not any and all 'hourly employees.'" *Id.*

In response, Mr. Adedapoidle-Tyehimba argues that Defendants' motion to strike is

10

procedurally improper as there is nothing "redundant, immaterial, impertinent, or scandalous"—the indispensable ingredients of a motion to strike—about his proposed class definition. In any event, asserts Mr. Adedapoidle-Tyehimba, "the question of whether the scope of Plaintiff's class is overly broad or relevant to Plaintiffs' allegations should be resolved only through the FLSA conditional certification process." Dkt. No. 47 at 6. As Mr. Adedapoidle-Tyehimba sees it, "it is not appropriate at this time to force Plaintiff to specify all the formal job titles and other particulars of each of the putative collective members;" rather, he "should at least be afforded the opportunity to conduct discovery to determine the various formal job titles before narrowing their class definition." *Id.* at 8-9.

In support for their positions, both sides point to job titles other than "personal trainer," which would be captured by the proposed FLSA definition and which are or are not allegedly similarly situated to Mr. Adedapoidle-Tyehimba: Defendants point out that the proposed FLSA definition would include secretaries, which are not similarly situated to Mr. Adedapoidle-Tyehimba, while Mr. Adedapoidle-Tyehimba points out that "Fitness and Pilates instructors," which he suggests are similarly situated to him, would be excluded from his class if it were limited to personal trainers.

**c. Discussion regarding Mr. Adedapoidle-Tyehimba's proposed FLSA class**

The FLSA allows an employee to maintain an action on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). The FLSA itself does not define the term "similarly situated," and neither has the Ninth Circuit. *Lewis v. Wells Fargo & Co.,* 669 F.Supp.2d 1124, 1127 (N.D. Cal. 2009); *Ramirez v. Ghilotti Bros. Inc.*, 12-cv-04590 CRB, 2013 WL 1786636 (N.D. Cal. Apr. 25, 2013).

Generally, courts in this Circuit take a two-step approach to determine whether employees are similarly situated for purposes of the FLSA. The court first makes an initial "notice stage" determination to assess whether a collective action should be certified for the purpose of sending notice of the action to potential class members. At this stage, the court looks for "substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan." *Lewis*, 669 F.Supp.2d at 1127 (citation and

11

1   internal punctuation omitted).  At the second stage, after the conclusion of discovery and usually
2   in response to a motion for decertification by the defendant, the court applies a stricter "similarly
3   situated" standard, reviewing various factors, including "the disparate factual and employment
4   settings of the individual plaintiffs; the various defenses available to the defendant which appear to
5   be individual to each plaintiff; [and] fairness and procedural considerations." *Id.* (citation and
6   internal punctuation omitted).  "The requisite showing of similarity of claims under the FLSA is
7   considerably less stringent than the requisite showing under Rule 23 of the Federal Rules of Civil
8   Procedure." *Id.*  Nevertheless, the plaintiff must still show that some "identifiable factual or legal
9   nexus binds together the various claims of the class members in a way that hearing the claims
10  together promotes judicial efficiency and comports with the broad remedial policies underlying the
11  FLSA." *Id.*

12      As the above demonstrates, whether members of a proposed FLSA collective action are
13  similarly situated to a plaintiff is typically addressed in connection with a motion to certify or
14  decertify a collective action.  Moreover, the Court is not convinced that a Rule 12(f) motion to
15  strike is an appropriate vehicle for addressing alleged deficiencies in a class definition, at least not
16  in this matter.  Defendants' concern is that the proposed definition is overbroad; not that it is
17  "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f).  Defendants cite six
18  cases for the proposition that "many cases hold that an FLSA [sic] class definition is subject to a
19  motion to strike." Dkt. No. 50 at 7.  However, in none of the six cases cited did a court actually
20  grant a motion to strike a class definition.  Accordingly, the Court denies Defendants' motion to
21  strike the FLSA class definition.[3]

22  **III.    Mr. Adedapoidle-Tyehimba's motion for equitable tolling**

23      Mr. Adedapoidle-Tyehimba moves for equitable tolling of the FLSA claims of potential
24  members of a proposed FLSA class.  He asserts that equitable tolling is warranted because

---

[3] The facts alleged in the SAC, if true, may not support conditional certification of the class as currently defined by Mr. Adedapoidle-Tyehimba, and the Court acknowledges Defendants' concern about the potential for unduly burdensome discovery arising from the breadth of the class definition.  Those concerns about discovery are a distinct issue from whether the class definition should be struck and may be raised separately in the discovery process.

Defendants' conduct, including filing motions to dismiss and to stay and refusing to provide him with potential class members' contact information, has delayed this action to the detriment of potential members of his proposed FLSA collective action members, whose claims may be extinguished before they can join the action. Mr. Adedapoidle-Tyehimba also asserts that equitable tolling is warranted, irrespective of Defendants' conduct, because the stay on discovery currently in place is delaying his ability to move for conditional certification of his class. The Court denies the motion for equitable tolling because this case, at least at this juncture, does not present an extraordinary circumstance in which equitable tolling would be warranted.

### a. Legal standard

Under some circumstances, a court may equitably toll otherwise applicable statutes of limitations. "Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." *Stoll v. Runyon,* 165 F.3d 1238, 1242 (9th Cir. 1999).

### b. Discussion

The statute of limitations for filing a claim under the FLSA is two years; three years if the violation is "willful." 29 U.S.C. § 255(a). For purposes of calculating the timeliness of a claim, claims for individual claimants who are not named plaintiffs are considered commenced when the claimant files a written consent to become a party plaintiff. 29 U.S.C. § 256(b).

A collective action under the FLSA thus differs from a Rule 23 class action, under which the statute of limitations is tolled when the complaint is filed. Accordingly, when Congress enacted Section 256 of the FLSA, it was aware that "time would lapse between the filing of the collective action complaint by the named plaintiff and the filing of written consents by the opt-in plaintiffs, yet it chose not to provide for tolling of the limitations period." *Woodard v. FedEx Freight E., Inc.*, 250 F.R.D. 178, 194 (M.D. Pa. 2008). Consistent with Congressional design then, good faith motion practice by a defendant does not amount to wrongful conduct warranting equitable tolling of FLSA claims. *See, e.g., MacGregor v. Farmers Ins. Exch.*, 10-cv-03088, 2011 WL 2731227 (D.S.C. July 13, 2011) ("Congress could have avoided the foreseeable delay of good

1  faith motions and judicial decision-making by patterning the statute of limitations for the FLSA

2  after that of Rule 23 for class actions; however, they did not do so."). Here, Defendants have filed

3  two motions to dismiss, both of which also sought other relief, including staying the claims and

4  discovery. Defendants' motions raised valid legal arguments and do not constitute wrongful

5  conduct warranting equitable tolling. *See id.* (filing motion to dismiss complaint and motion to

6  dismiss amended complaint did not warrant equitable tolling of FLSA claim).

7  Defendants' refusal to provide potential plaintiffs' contact information to Mr.

8  Adedapoidle-Tyehimba also does not warrant equitable tolling, as a defendant in a FLSA suit is

9  not required to provide contact information for potential plaintiffs until after the court certifies a

10 collective action.[4] *Gilbert v. Citigroup, Inc.*, 08-cv-0385 SC, 2009 WL 424320 (N.D. Cal. Feb.

11 18, 2009) ("Defendants' refusal to provide contact information prior to certification does not count

12 as wrongful conduct"); *Prentice v. Fund for Pub. Interest Research, Inc.*, 06-cv-7776 SC, 2007

13 WL 2729187 (N.D. Cal. Sept. 18, 2007) ("If refusal to disclose contact information is sufficient

14 basis to grant equitable tolling, either the FLSA statute of limitations is meaningless or the Courts

15 are reading a disclosure requirement into the FLSA where the statute does not contain such a

16 requirement. Neither outcome is appropriate.").

17 In addition, it appears that Mr. Adedapoidle-Tyehimba agreed, or at least acquiesced, to

18 stay discovery on the FLSA claim pending resolution of the *Rothberg* action. The resolution of

19 the *Rothberg* case may well have a significant impact on this litigation, so the stay was certainly

20 appropriate. Mr. Adedapoidle-Tyehimba's acquiescence to the stay also makes equitable tolling

21 inappropriate at this time.[5]

---

[4] The Court also notes that at least six individuals have filed consents to be plaintiffs in this action, suggesting that Defendants' conduct has not in fact prevented Mr. Adedapoidle-Tyehimba from identifying other potential plaintiffs and notifying them of this action. *See* Dkt. Nos. 26, 33, 42, 46, 54.

[5] The Court is concerned about the amount of time elapsing while the *Rothberg* action is pending and how that may affect potential class members. A second hearing in state court on the *Rothberg* settlement is set for August 20, 2013. At the hearing on August 7, 2013, this Court (i) directed that once the decision is made whether to approve the *Rothberg* settlement, counsel should meet and confer about the impact of the determination in *Rothberg* on this case, including with respect to discovery issues and the motion for conditional certification of the class, and (ii) scheduled a Case Management Conference for September 17, 2013. The Court may reconsider equitable tolling at a later date if circumstances beyond plaintiff's control interfere with his ability to seek

United States District Court
Northern District of California

**CONCLUSION**

For the reasons stated above, the Court GRANTS NEV's and NEFC's motion to dismiss, with leave to amend.  The Court DENIES Defendants' motion to strike and the Court DENIES Mr. Adedapoidle-Tyehimba's motion for equitable tolling.

**IT IS SO ORDERED.**

Dated: August 9, 2013



_____
WILLIAM H. ORRICK
United States District Judge

---

certification.