Mark D. Kemple (State Bar No. 145219)
Ashley Farrell (State Bar No. 271825)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Tel: (310) 586-7700
Fax: (310) 586-7800
Email: kemplem@gtlaw.com
Email: farrella@gtlaw.com

Attorneys for Defendants Crunch LLC,
New Evolution Ventures, LLC and
New Evolution Fitness, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| OSABEMI-YE ADEDAPOIDLE-TYEHIMBA, individually, and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>CRUNCH LLC, a Delaware limited liability company; NEW EVOLUTION VENTURES, LLC, a Delaware limited liability company; and NEW EVOLUTION FITNESS COMPANY, LCC, a Delaware limited liability company; and DOES 1-100, inclusive,<br><br>        Defendants. | CASE NO. CV 13-00225 WHO<br><br>The Honorable William H. Orrick<br><br>**DEFENDANT CRUNCH LLC'S UPDATE TO CASE MANAGEMENT STATEMENT IN LIGHT OF APPROVAL OF SETTLEMENT IN *ROTHBERG***<br><br>Date:   September 17, 2013<br><br>Time:   2:00 p.m.<br><br>Ctrm:   2 |

CASE MANAGEMENT STATEMENT

NY 243178559v3
NY 243303215v1

Defendant Crunch LLC submits this update to the parties' Case Management Statement [Docket 55] filed pursuant to this Court's June 27, 2013 Order.

**(A)    Status of this Federal Action.**

This action was filed on January 16, 2013, but was not served.  [Docket 1.]  On February 7, 2013, a "First Amended Complaint" was filed.  [Docket 12.]  This First Amended Complaint was served on Defendants on February 15, 2013, which was three days after a settlement was reached in a prior-filed state court action (*Rothberg v. Crunch LLC*, San Francisco Superior Court Case No. CGC-12-519740) alleging the same facts on which Mr. Tyehimba seeks bring this action.

In response to Defendants' Rule 12(b)(6) motion, on May 3, 2013, this Court ruled that Plaintiff had failed to state an FLSA claim as against any of the named defendants, but granted leave to amend to attempt to do so.  [Docket 39.]

On the same day, concerning the state law claims, this Court granted Defendant's motion to stay and abstained from all of Plaintiff's the state law claims (premised on supplemental jurisdiction) in favor of the prior-filed *Rothberg* state law action, pursuant to *Colorado River* abstention, and stayed all proceeding on such claims.  [Docket 39, at 6:13-25.]  Next, on May 14, 2013, the Court also stayed discovery on these FLSA claims "*pending finalization of the settlement pending in a related state court proceeding*" – namely, the prior-filed *Rothberg* action.  [Docket 41.]

Next, Plaintiff filed a Second Amended Complaint ("SAC") (Docket 40), and Defendants again challenged it.  [Docket 43, 47, 50.]  On August 9, 2013, the Court dismissed defendants NEV and NEFC from the pleading, with leave to amend.  [Docket 59.]  The Court did not set a time limit for Plaintiff amend, if he chose to do so.  [*Id.*]  Today, September 16, 2013, Plaintiff's counsel informed defense counsel that Plaintiff would not file an amended pleading seeking to state a claims against NEV and NEFC.  Also on August 9, 2013, the Court denied Plaintiff's motion to toll the statute of limitations.  [*Id.*]

The Court set a further status conference for the September 17, 2013, at which time the parties would report on the *Rothberg* preliminary approval hearing.

NY 243303215v1

**(B)**     **The *Rothberg* Settlement Has Been Approved.**

Though originally scheduled for August 21, 2013, the *Rothberg* preliminary approval motion was rescheduled for September 11, 2013.  At the hearing, Superior Court Judge Goldsmith **granted** the motion in full, over Tyehimba's objections.   The Parties (and improper objector Tyehimba) having briefed the FLSA release issue at length (twice),[1] the Superior Court specifically found that the settlement in the *Rothberg* action could and would release the FLSA claims made here on the same primary rights asserted in *Rothberg*.  [Exhibit A.]  In so doing, the Court repeatedly noted that it very likely would grant final approval as well stating, for example, that it is "an extremely comprehensive settlement," and that "[t]his is a heavily litigated case and contentious as well in terms of the history of

---

[1] ***See e.g., Bato v. Laboratory Corporation of America Holdings***, 2011 WL 3353280 (C.D. Cal. March 4, 2011) (settlement of a state law class action in which a FLSA claim was not pled releases FLA claims on the same primary right; court "concludes that FLSA claims may be released as part of Rule 23 class action without following the opt-in procedure that would be required had plaintiffs asserted FLSA claims and sought to certify an FLSA collective action for settlement purposes"); ***Klein v. Ryan Beck Holdings, Inc.***, 2007 WL 2059828, *7 (S.D.N.Y. July 13, 2007) ("a decision rendered on the [state law] class action claims could have preclusive effect on FLSA claims-amounts to little more than a quarrel with the doctrine of *res judicata*…no provision of the FLSA bars the application of *res judicata* when the same party requirement is satisfied, as would be the case when a person allows his state law claims to be adjudicated in a rule 23 class action."); ***Kuncl v. Int'l Bus. Machines Corp.***, 660 F. Supp. 2d 1246, 1254 (N.D. OK. 2009) ("the court finds no basis either in § 216(b) or in the congressional intent behind the statute to hold that res judicata principles do not apply ... allowing Kuncl to litigate his misclassification claims [] twice would undermine the goals behind class actions and promote, rather than avoid, repetitious litigation."; "[section] 216(b) [of the FLSA] does not create an exception to the res judicata doctrine."); ***Valerio v. Boise Cascade Corp.***, 80 F.R.D. 626, 648-49 (N.D. Cal. 1978), *aff'd and adopted*, 645 F.2d 699 (9th Cir. 1981) ("a prior valid judgment operates as an absolute bar to a second suit between the same parties or their privies based on the same cause of action not only in respect of every matter actually litigated, but also as to every ground of recovery or defense which might have been presented. …  Furthermore, consideration of a *res judicata* defense is appropriate even though the [prior] judgment was based upon a stipulated settlement…. Furthermore, restricting the *res judicata* effect of class action settlements would lessen a defendants' incentive to settle, which would be unfortunate for reasons recently noted by the Ninth Circuit"); ***Villacres v. ABM Industries, Inc.***, 189 Cal.App.4th 562, *15-*16 (2010) ("[A] judgment pursuant to a class settlement can bar [subsequent] claims based on the allegations underlying the claims in the settled class action. This is true even though the precluded claim was not presented, and could not have been presented, in the class action itself."); ***Gamble v. General Foods Corp.***, 229 Cal.App.3d 893, 898-99 (1991) ("Where, as here, an action is filed in a California state court and the defendant claims the suit is barred by a final federal judgment, California law will determine the res judicata effect of the prior federal judgment on the basis of whether the federal and state actions involve the same primary right"; under the primary right theory, "[a] single cause of action is based on the harm suffered, rather than the particular legal theory asserted or relief sought by the plaintiff.").

---

2

CASE MANAGEMENT STATEMENT

it, and the background of it.  This was an adversarial exercise, and this is exactly the sort of process that gives comfort, if you will, that the issues are covered.  This is not a sweetheart deal."  The Court made clear that Tyehimba could raise "everything you want at final approval stage, but I'm just telling you what the Court's strong impression is."  The court ended by noting that "it appears to me that class members had vigorous representation.  I don't think it's a close call at this stage."  [Exhibit B, Transcript at 13:4, 15:12-17, 18:17-19.]

Having so ruled, the *Rothberg* Court also set an <u>extremely short time frame for final approval</u>, which will be heard by that Court just 10 weeks from now, on <u>December 9, 2013</u>.  [Exhibit A.]

As such, and for all the reasons underlying this Court's prior stay rulings, defendant Crunch LLC requests that the Court continue the stay of this action "<u>pending finalization of the settlement pending in a related state court proceeding</u>."  [Docket 41 (emphasis added).][2]

**(C)   Apart From the Reasons Previously Articulated By This Court For Staying this Action (Particularly Now That the *Rothberg* Settlement Is Approved) This Action Also Should Remain Stayed To Avoid Additional Improper Attempts By Tyehimba's Counsel To Interfere With Administration Of The *Rothberg* Class and Settlement.**

As discussed above, all class action claims in this action have been stayed since May 3, 2013.  Yet, as we have just learned, Tyehimba's counsel has been masquerading as class counsel in a flagrant attempt to disrupt the *Rothberg* class action, and improperly solicit clients.  Apart from improperly lodging "objections" to a *preliminary* approval request on which her client had no standing to object (and never will, as we all know her client will opt-out of *Rothberg* in favor of his claims made here in this federal action),[3] and apart from lodging those objections with the Superior Court department

---

[2] As this Court noted at the last status conference, "if the Court grants [preliminary approval], then the shape of the case is probably going to change, and you [Plaintiff] are going to have to think about how you want to proceed, I would guess, in light of it.  [Docket 60, at 18:19-21.]

[3] It is at the *final* approval – not preliminary approval – that a court to consider the reaction of the *entire* class to the proposed settlement, not just one person.  *Dunk v. Ford Motor Company*, 48 Cal.App.4th 1794, 1801 (1996); *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 240 (2001) ("among the factors considered by the court in evaluating fairness is... Whether the class members have reacted favorably or unfavorably to the proposed settlement.").  Even then, non-party Tyehimba – like all putative class members – has no standing to file an opposition to a motion for preliminary approval.  Indeed, it is only <u>after</u> a person has joined the class that he/she has ay standing to object to the class

hearing the matter even <u>after</u> her improper objection was <u>rejected</u> at the filing window for lack of standing,[4] Tyehimba's counsel has, in effect, been pretending to be Rothberg's counsel and communicating with the *Rothberg* class.

Specifically, at the September 11, 2013 hearing in *Rothberg*, counsel for Rothberg noted that Tyehimba's counsel has been contacting her client and other class members to solicit participation in this federal action. Importantly, as no class or collective proceeding has been certified in this federal action, these efforts are flagrant solicitations of <u>individual</u> <u>plaintiffs</u> as clients (not suggestion to join a certified action) in violation of well-known ethical restrictions. Moreover, they are interferences with the state law action, in which these claims are *not* stayed. Upon hearing this, Judge Goldsmith stated that Tyehimba's counsel's conduct "<u>fosters confusion on the part of class members</u>" and "<u>some people will not know what – what lawsuit they're in</u>." [Exhibit B, at 23:6-7, 23:23-24.] Judge Goldsmith then ordered Ms. Gibbs (Tyehimba's counsel) to provide Rothberg's counsel with the materials that she sent to *Rothberg* putative class members. [Id. at 21:20-21.] Judge Goldsmith further clarified that Rothberg's counsel, <u>not Tyehimba's counsel</u>, is counsel for the class on the primary rights asserted in *Rothberg* action (which are repeated in the pleading in this later-filed *Tyehimba* action). [*Id.* at 23:11-

---

settlement. See *Rebney v. Wells Fargo Bank*, 220 Cal. App. 3d 1117, 1136 (1990) (persons who have not elected to be a part of a class lacked standing to object to settlement of class action); *Chase v. Superior Court*, 210 Cal.App.2d 872, 876 (1962) (where a "law firm was not a party to the action [it] had no standing to make a motion"); *In re Corrugated Container Antitrust Litigation*, 756 F.2d 411,418-19 (5th Cir.1985) ("An opt out plaintiff is not a party to the class action"); *In re Vitamins Antitrust Litigation*, 215 F.3d 26 (D.C. Cir. 2000) (persons who have not elected to be a part of a class have no standing to object to a settlement; "their interests are not congruent with the interests of the settling class that were in play at the time of their motion to intervene"); *In re Drexel Burnham Lambert Group, Inc.*, 130 B.R. 910, 923 & n. 8 (S.D.N.Y.1991) (at final approval, "[o]nly Class members have standing to object to the Settlement of a class action."); *Marshank v. Superior Court,* 180 Cal.App.2d 602, 605 (1960) ("It is settled that one who is not a party to a proceeding may not make a motion therein.... It would seem to confound the reason of law ... that one not interpleaded as a party, neither for nor against whom the court could render any relief or judgment, could *sua sponte*, come into the litigation for any purpose.") (*citing Difani v. Riverside County Oil Company*, 201 Cal. 210, 214 (1927)); 4 Alba Conte & Herbert B. Newberg, Newberg On Class Actions § 13:69 (4th ed. 2002) ("Nonparties to a settlement generally do not have standing to object to a settlement of a class action").

[4] See Exhibit C (email confirming same). We note that Tyehimba's counsel failed to inform counsel for the Parties that her objections were rejected by the filing window, and that she lodged it with the department at which the matter would be heard any way.

CASE MANAGEMENT STATEMENT

18.]

In a "response" that in no way addressed her solicitation of individual clients, Tyehimba's counsel falsely represented to Judge Goldsmith on September 11 that these communications were all prior to the stay of these claims in federal court. [Exhibit B, at 23:8-11.]

In fact – as we have now learned – the solicitations occurred on May 23, 2013, more than three weeks after the May 3 stay of the state law claims was issued by this Court, and more than a week after the stay pertaining to the FLSA claims.

In response to Judge Goldsmith's Order, Tyehimba's counsel's produced a May 23 communication to the class, which in turn points to a still-posted website titled "Tyehimba v. Crunch LLC." [Exhibit D.] In it, Tyehimba's counsel continues to represent that she is counsel in the "California Class Action," and she solicits persons (would-be clients) to join in the "FLSA" action on the same primary rights as those at issue in *Rothberg*. Again, apart from the fact that these are flagrant solicitations of individual clients, as Judge Goldsmith stated, Tyehimba's counsel's conduct also "fosters confusion on the part of class members." He therefore ordered Tyehimba's counsel to desist from such communications, in deference to Rothberg's counsel, who is counsel for the class. [Exhibit B, at 23:6-7, 23:23-24, 21:20-21.] To date, however, Tyehimba's website remains, unchanged.

* * *

For each of these reasons, Defendant requests that this action remain stayed in its entirety until at least the December 9, 2013, final approval hearing on the *Rothberg* settlement. We also request that this Court too order Tyehimba's counsel to cease solicitations of members of the *Rothberg* putative class, and take down counsel's "Tyehimba v. Crunch" website.

DATED: September 15, 2013                    GREENBERG TRAURIG, LLP


By _____/s/_____
                    Mark D. Kemple
                Attorneys for Defendants Crunch LLC,
                New Evolution Ventures, LLC and New Evolution Fitness,
                LLC

CASE MANAGEMENT STATEMENT

NY 243303215v1

Exhibit A

1  Scott Edward Cole, Esq. (S.B. #160744)
   Molly A. DeSario (S.B. #230763)
2  Jessica L. Campbell, Esq. (S.B. #280626)
   SCOTT COLE & ASSOCIATES
3  1970 Broadway, Ninth Floor
   Oakland, California 94612
4  Telephone: (510) 891-9800
   Facsimile: (510) 891-7030
5  Email: scole@scalaw.com
   Email: mdesario@scalaw.com
6  Email: jcampbell@scalaw.com

7  Attorneys for Representative Plaintiff
   and the Plaintiff Class
8
   GREENBERG TRAURIG, LLP
9  Mark D. Kemple (SBN 145219)
   Ashley Farrell (SBN 271825)
10 1840 Century Park East, Suite 1900
   Los Angeles, CA 90067
11 Telephone: (310) 586-7700
   Facsimile: (310) 586-7800
12 Email: kemplem@gtlaw.com
   Email: farrella@gtlaw.com
13
   Attorneys for Defendant
14 CRUNCH LLC

15

16

**F I L E D**
San Francisco County Superior Court

SEP 1 1 2013

CLERK OF THE COURT
BY: _____
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| 19  REBECCA ROTHBERG, individually, and | CASE NO. CGC 12-519740 |
| 20  on behalf of all others similarly situated, | [PROPOSED] ORDER GRANTING |
| 21            Plaintiff, | PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR |
| 22  vs. | CLASS NOTICE OF SETTLEMENT AND FAIRNESS HEARING |
| 23  CRUNCH LLC and DOES 1-100, inclusive, | Date:       August 21, 2013 |
| 24            Defendants. | Time:       9:30 a.m. Dept.:       302 |
| 25 | Action Filed:  April 4, 2012 |
| 26 | Trial Date:    None Set |

27

28
        [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION
    SETTLEMENT AND CLASS NOTICE OF SETTLEMENT, AND SETTING FAIRNESS
                                    HEARING

NY 243197679v1

1   The Joint Motion for Preliminary Approval of Class Action Settlement ("Joint Motion")

2   filed by Plaintiff Rebecca Rothberg ("Plaintiff") and Defendant Crunch LLC ("Crunch") came

3   regularly for hearing before this Court on August 21, 2013. After consideration of all the papers

4   filed in connection therewith, the arguments of counsel, and all other matters presented to the

5   Court, the Court hereby makes a preliminary finding that the proposed class action settlement is

6   fair, reasonable, adequate and in the best interests of the settlement class. Good cause appearing

7   therefore, the Court **GRANTS** the Joint Motion and **ORDERS** as follows:

8          1.     The terms of the settlement agreement reached by Plaintiff and Crunch, as set

9   forth in the Settlement Agreement, are hereby preliminarily approved as being fair, reasonable

10   and adequate to the members of the Settlement Class, subject to further consideration at the final

11   approval hearing after the distribution of the notice to the members of the Settlement Class as

12   provided in paragraph 6 of this Order. The Court notes that class members' release of claims

13   arising under the Fair Labor Standards Act ("FLSA") is a material term of this settlement

14   agreement, and acknowledges that putative class members who do not opt-out of the Rule 23

15   class settlement will be deemed to have released FLSA claims as well as state law claims.

16          2.     The following settlement class is preliminarily approved for settlement purposes

17   only, and is referred to herein as the "Settlement Class:" Any and all individuals employed as a

18   personal trainers, group fitness instructors, or Pilates instructors by Crunch in California as

19   hourly, non-exempt employees at any time during the period between April 4, 2008 and [the

20   Preliminary Approval Date].

21          3.     The Court appoints Scott Cole & Associates as counsel on behalf of the

22   Settlement Class ("Class Counsel") for purposes of settlement only.

23          4.     Plaintiff Rebecca Rothberg is hereby appointed as representative of the Settlement

24   Class ("Class Representative") for purposes of settlement only.

25   ///

26   ///

27   ///

28   **[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND CLASS NOTICE OF SETTLEMENT, AND SETTTING FAIRNESS
HEARING**

NY 243197679v1

1    5.    The form of "Notice of Class Action Settlement" ("Notice"), and the

2  accompanying "Exclusion or Opt-Out Request Form" ("Exclusion Request Form"), attached

3  respectively as Exhibits 1 and 2 hereto, are hereby approved.

4    6.    The Court authorizes mailing of the Notice and Exclusion Request Form to the

5  Settlement Class Members by first-class United States mail to their last known addresses within

6  fourteen (14) business days of [the Preliminary Approval Date]. Crunch shall provide the Claims

7  Administrator with the information necessary to conduct this mailing as set forth in the

8  Settlement Agreement within seven (7) business days of [the Preliminary Approval Date].

9    7.    A hearing to consider and determine (i) whether the Settlement Agreement should

10  be finally approved, (ii) whether Class Counsel's application for attorneys' fees should be

11  approved, and (iii) whether the application for a Class Representative incentive award should be

12  approved, is hereby set for *December 9*, 2013 at *10* a.m.

13    **IT IS SO ORDERED.**

14

15  Dated   *9/11/13*

16                                       *Ernest H Goldsmith*

17                                       THE HONORABLE MARLA J. MILLER

18  Respectfully submitted,

19  DATED: July *23*, 2013              SCOTT COLE & ASSOCIATES, APC

20                                       By: *molly a. desario*

21                                          Scott Edward Cole
                                            Molly A. DeSario

22                                       Attorneys for Plaintiff Rebecca Rothberg

23

24  DATED: July 23, 2013               GREENBERG TRAURIG, LLP

25

26                                       By: _____/s/_____
                                            Mark D. Kemple

27                                          Ashley M. Farrell
                                         Attorneys for Defendant Crunch LLC

28

---

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND CLASS NOTICE OF SETTLEMENT, AND SETTTING FAIRNESS
HEARING**

# EXHIBIT 1

According to Crunch LLC ("Crunch") records: (1) you were employed by Crunch LLC ("Crunch") in California as an hourly (exempt) personal trainer, group fitness instructor, or Pilates instructor at any time from April 4, 2008 through [date of preliminary approval] (the "Class Period"); (2) you taught or conducted a total of _____ group fitness classes and/or individual personal training sessions while employed by Crunch during the Class Period. Accordingly, your estimated individual settlement amount from the settlement described below is $ _____

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN FRANCISCO

| | |
|---|---|
| REBECCA ROTHBERG, individually, and on behalf of all others similarly situated, | CASE NO. CGC 12-519740 |
| vs. | **NOTICE OF CLASS ACTION SETTLEMENT** |
| CRUNCH LLC and DOES 1-100, inclusive. | |

**The Superior Court of the State of California for the County of San Francisco ("the Court") authorized this Notice of Class Action Settlement ("Notice"). This is not a solicitation from a lawyer. The Court has given preliminary approval to a settlement of this lawsuit. If you were employed by Crunch LLC ("Crunch") in California at any time from April 4, 2008 through [date of preliminary approval], you should read this Notice carefully because it will affect your rights.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| Do NOTHING | Receive a payment. Release certain claims under state law and federal law, including Fair Labor Standards Act ("FLSA") claims currently pending before the United States District Court of California, Northern District in *Tyehimba v. Crunch* (Case No. CV-13-00225). |
| EXCLUDE YOURSELF | Submit a request for exclusion (also called an "opt out" request) to exclude yourself from the lawsuit, receive no money and do not release the claims alleged in this case.<br><br>If you wish to be excluded from this settlement, please follow the instruction on the enclosed Exclusion or Opt Out Request Form ("Exclusion Request Form"). |
| OBJECT | Submit a written objection to the Court.<br><br>If you disagree with the proposed settlement, you may submit an objection. If the Court agrees with your objection, the parties can choose whether to withdraw the settlement or change its terms. If the Court rejects your objection, you will still be entitled to participate in the settlement unless you have excluded yourself. |
| GO TO A HEARING | Ask to speak in Court about the fairness of the settlement. In order to speak at the hearing, however, you also must timely submit a written objection. |

These rights and options—and the deadlines to exercise them—are explained in this Notice.

- The Court in charge of this case still needs to decide whether to finally approve the settlement. Payments will be made if the Court approves the settlement and after appeals (if any) are resolved.

## BASIC INFORMATION

| 1. | Why did I receive this Notice? |
|---|---|

You received this Notice because Crunch records show that you were employed by Crunch as a non-exempt, personal trainer, group exercise instructor or Pilates instructor employee based in California at any time from April 4, 2008 through [date of preliminary approval] ("Class Period"). This Notice explains that the Court has granted preliminary approval of a proposed settlement of a class action lawsuit that may affect you. You have legal rights and options that you may exercise before the Court decides whether to grant final approval of the proposed settlement.

| 2. | What is this lawsuit about? |
|---|---|

In the lawsuit, styled *Rebecca Rothberg v. Crunch LLC.*, Case No. CGC 12-519740) (the "Action"), plaintiff Rebecca Rothberg on behalf of herself and on behalf of all other Crunch non-exempt personal trainer, group exercise instructor or Pilates instructor employees in California has alleged that Crunch (1) failed to provide meal and/or rest breaks; (2) failed to pay premium wages owing for unprovided meal and/or rest breaks; (3) failed to timely pay for work that was "off the clock" but allowed or otherwise permitted by Crunch; (4) failed to pay overtime wages; (5) miscalculated overtime; (6) failed to provide accurate wage statements or otherwise maintain proper time records; (7) failed to timely pay wages upon termination; (8) failed to pay waiting time penalties; (9) failed to reimburse business expenses; (10) required waiver of Labor Code provisions; (11) in any way violated the California Labor Code Private Attorney General Act; (12) engaged in unfair business practices. Plaintiff also sought penalties against Crunch pursuant to PAGA as well as damages, other penalties, interest, and attorneys' fees and costs.

Crunch denies it did anything wrong.   Nothing in this Notice, or the Settlement itself, means that Crunch admits wrongdoing.

| 3. | Why is this a class action? |
|---|---|

The Parties agreed to treat this case as a class action for purposes of settlement only. In a class action, one or more persons, in this case Rebecca Rothberg ("Class Representative"), file a lawsuit on behalf of people who have similar claims. These people together are called "Settlement Class Members." The company sued (in this case Crunch) is called the Defendant. Settlement Class Members and Defendant are sometimes referred to in this Notice as the "Parties." In this case, the Parties have decided to settle the case. The Court has made a preliminary determination that the proposed settlement appears fair, adequate, and reasonable. The Court will decide whether to finally approve the proposed settlement after the Settlement Class Members are given a chance to exclude themselves from or object to the proposed settlement.

| 5. | Is there any money available now? |
|---|---|

No money or benefits are available right now because the Court has not yet decided whether to give final approval to the settlement. If the Court gives final approval to the settlement, then you will automatically be sent your portion of the settlement once the Court's order becomes final unless you exclude yourself, or opt-out, from the settlement.

## WHO IS A SETTLEMENT CLASS MEMBER?

| 6. | How do I know if I am a Settlement Class Member? |
|---|---|

All current and former non-exempt hourly personal trainer, group exercise instructor and Pilates instructor Crunch employees who were or are employed by Crunch in California at any time from April 4, 2008 through [date of preliminary approval], inclusive, are defined as "Settlement Class Members." All Settlement Class Members who do not timely request to be excluded from the settlement as set forth below will be "Participating Class Members," and the Participating Class Members are sometimes collectively referred to as the "Class."

| 7. | I am still not sure if I am a Settlement Class Member. |
|---|---|

If you are still not sure whether you are a Settlement Class Member, you can ask for help. You can call [Name of Claims Administrator, the Claims Administrator, at 1-800-XXX-XXXX]. You will not have to pay the Claims Administrator to answer your questions; they will be paid from the Maximum Payment, in amounts approved by the Court, as described in Questions 8 and 9 below.

## THE SETTLEMENT BENEFITS-WHAT YOU RECEIVE

| 8. | What does the settlement provide? |
|---|---|

The proposed settlement requires Crunch to pay a Maximum Payment not to exceed One Million Fifty Thousand Dollars ($1,050,000.00). That amount includes payments for attorneys' fees and costs, an incentive award for the Class Representative, claims administration costs, and a payment to the California Labor and Workforce Development Agency under the PAGA. The amount remaining after these payments is the amount available to distribute to the class ("Net Settlement Amount"), which will be no less than Six Hundred and Forty-Five Thousand Dollars ($642,500.00). Settlement proceeds will be paid to all Settlement Class Members who do not submit an Exclusion Request Form.

| 9. | What can I get from the settlement? |
|---|---|

The amount of your share of the Net Settlement Amount will be calculated on a pro rata basis as follows. Crunch will use its payroll records to calculate the total compensation Crunch paid to each Participating Class member from Crunch during the Class Period for teaching or conducting group fitness classes, Pilates classes and/or personal training sessions. Each Participating Class Member's compensation will then be divided by the total amount of compensation Crunch paid to all Participating Class Members during the Class Period for teaching or conducting group fitness classes, Pilates classes and/or personal training sessions, to create a percentage for each class member. That percentage will then be multiplied by the Net Settlement Amount to determine each Participating Class Member's pro rata recovery under this settlement. Your estimated Individual Settlement Amount is shown at the top of this Notice.

| 10. | Will taxes be withheld from my settlement payment? |
|---|---|

Your Individual Settlement Amount will include a wage portion (representing unpaid wages), and a non-wage portion (representing penalties, interest and other consideration). From the wage portion of each Settlement Class Member's Individual Settlement Amount, payroll deductions will be made for state and federal withholding taxes and any other applicable payroll deductions owed by the Settlement Class Member and Crunch as a result of the payment, resulting in a "Net Wage Component." The total of the Net Wage Component and the non-wage portion of the Individual Settlement Amount will be the Settlement Class Member's "Net Payment." The wage portion of the Settlement Class Member's Individual Settlement Amount will be reported to the appropriate taxing authorities on an IRS Form W-2 or analogous form. The non-wage portion of the Settlement Class Member's Individual Settlement Amount will be reported to the appropriate

taxing authorities on an IRS Form 1099 or analogous form. Other than the withholding and reporting requirements specifically set forth above, Settlement Class Members are solely responsible for all taxes due on payments made pursuant to the settlement.

| 11. | If the settlement is approved, when will I receive my settlement payment? |
|---|---|

The Court has scheduled a Fairness/Final Approval Hearing on _____ __, 2013, at __:__ a.m. in Department 302 of the Superior Court of the State of California for the County of San Francisco, located at 400 McAllister Street, San Francisco, CA 94102, at which time the Court will determine: (1) whether the proposed settlement should be approved as fair, reasonable and adequate to Participating Class Members; and (2) whether the applications for attorneys' fees, costs, and the Class Representative's incentive award should be approved. If the Court approves the settlement, an Order Granting Final Approval will be entered. It is neither required nor necessary that you attend the Fairness Hearing.

Once the Order Granting Final Approval is signed by the Court, and if there is no appeal of the Court's order, then checks will be mailed out to the Class Members within approximately 90 days. If an appeal is filed, then distributions will be delayed until after final resolution of any appeals.

### HOW YOU RECEIVE A PAYMENT

| 12. | How can I receive a payment? |
|---|---|

**If this Notice was sent to you at your current address, you do not need to do anything further to receive payment. If this Notice was forwarded by the postal service, or if it was otherwise sent to you at an address that is not current, or if you have changed your address, then you should immediately notify the Claims Administrator in writing stating your name and past and current addresses.**

The Claims Administrator's address is:

By U.S. Mail:

Crunch Claims Administration
c/o [Claims Administrator]
P.O. Box ___
City, State ZIP

By Commercial Carrier or in person:

Crunch Claims Administration
c/o [Claims Administrator] Street Address
Street Address
City, State, ZIP

**Otherwise, you do not need to do anything to receive a payment so long as you do not exclude yourself from the Class.**

| 13. | What am I giving up if I stay in the class? |
|---|---|

If you do nothing, you will be bound by any judgment entered in this Action and will not be allowed to sue Crunch for any claims occurring between April 4, 2008 and [date of preliminary approval], that arise from, relate to or are based on any and all claims alleged in the Action, including Fair Labor Standards Act ("FLSA") claims currently pending before the United States District Court of California, Northern District in *Tyehimba v. Crunch* (Case No. CV-13-00225), to the extent they are made on the same facts and circumstances at issue in this Action. Doing nothing also means that all of the Court's orders will apply to you and legally bind you. It also means that you will be bound by the following Release:

All Participating Class Members, on behalf of themselves, their successors, assigns, heirs, executors, trustees and administrators, shall fully and finally release and discharge Crunch, its past, present and future, direct and indirect, parents, subsidiaries, divisions, partners and affiliates, including NEFC Crunch LLC, AGT Crunch Acquisition LLC, New Evolution Ventures LLC, Lafayette Holding Company LLC, New Evolution Fitness Company LLC and their respective past and present stockholders, officers, directors, employees, managers,

attorneys and insurers, as well as any other persons or entities who are alleged to have been involved in the conduct alleged, or sought to be alleged, in the Action from any and all claims, demands, rights, liabilities, and/or causes of action of any nature and description whatsoever, known or unknown, in law or in equity, whether concealed or not concealed or hidden, from the beginning of time through the Preliminary Approval Date arising from, related to, or based on the claims asserted by Plaintiff Rebecca Rothberg in any pleading in the Action, including without limitation violations of any state or federal statutes, rules, or regulations, based upon, arising out of, or related to any claims or allegations raised in the Action, including those claims or allegations that Crunch (1) failed to provide meal and/or rest breaks; (2) failed to pay premium wages owing for unprovided meal and/or rest breaks; (3) failed to timely pay for work that was "off the clock" but allowed or otherwise permitted by Crunch; (4) failed to pay overtime wages; (5) miscalculated overtime; (6) failed to provide accurate wage statements or otherwise maintain proper time records; (7) failed to timely pay wages upon termination; (8) failed to pay waiting time penalties; (9) failed to reimburse business expenses; (10) required waiver of Labor Code provisions; (11) in any way violated the California Labor Code Private Attorney General Act; (12) engaged in any unfair business practices alleged in the Action and any of the facts, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act which relate to or arise out of, in any way, the facts and circumstances that have been alleged in the Action.  Released claims expressly include claims arising under the Fair Labor Standards Act ("FLSA").  Released claims expressly exclude claims for workers' compensation, unemployment, discrimination, retaliation and claims unrelated to any wage and hour violation. These constitute the "Released Claims."

By failing to exclude themselves from the settlement, Participating Class Members expressly waive and relinquish any rights and benefits they have or may have under California Civil Code Section 1542 with respect to the Released Claims.  The Participating Class Members agree that Civil Code Section 1542 is expressly waived and relinquished to the fullest extent permitted by law as to the Released Claims.  This Release will cover all Settlement Class Members who do not opt out, regardless of whether they make a claim, or are available for delivery or have delivered to them, their payment under the settlement.  Section 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

By failing to exclude themselves from the settlement, Participating Class Members acknowledge and agree that all of the claims for wage and hour and payroll practice violations in the Action are disputed, and that the Participating Class Members' Individual Settlement Amounts constitute payment in full of any and all amounts allegedly due to them.  In light of the foregoing, Participating Class Members shall be deemed to have acknowledged and agreed that California Labor Code section 206.5 is not applicable to the Parties hereto. That section provides in pertinent part as follows:

> An employer shall not require the execution of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made.

Your settlement check will include language indicating that, by endorsing the check, you are agreeing to waive or release the Released Claims.

| 14. | What if I get my payment and don't cash it? |
|---|---|

If you receive the payment and do not cash your check, you will still be bound by the terms of the settlement and you will release all claims released under this settlement.  After 100 days, the Claims Administrator will stop payment on your check.

| 15. | What happens if I do nothing at all? |
|---|---|

If you do nothing, you will receive a payment from the settlement and you will be bound by the terms of the settlement. This means that if you do nothing, you may not be able to sue for claims alleged in this case that occurred from April 4, 2008 through [date of preliminary approval], including Fair Labor Standards Act ("FLSA") claims currently pending before the United States District Court of California, Northern District in *Tyehimba v. Crunch* (Case No. CV-13-00225), to the extent they are made on the same facts and circumstances at issue in this Action. You will also be legally bound by all of the Orders the Court makes, and judgments the Court enters in this class action. For further information, you can speak with the attorneys in this case listed in Question 26.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you want to retain the right to pursue claims against Crunch alleged in this case and/or you do not want a payment from this settlement, then you must take certain steps. This is called excluding yourself, and is also referred to as "opting out" of the settlement. **DO NOT EXCLUDE YOURSELF IF YOU WISH TO RECEIVE MONEY FROM THIS SETTLEMENT.**

| 16. | How do I request to be excluded from the settlement? |
|---|---|

To exclude yourself from the settlement, you must submit a written statement requesting exclusion from the Class by certified mail, postmarked on or before_____, 2013, or by some other means so that it is actually received by the Claims Administrator on or before_____, 2013. Your written request for exclusion must contain your full name, the last four digits of your Social Security number, your mailing address and your telephone number. You must return your request to:

By U.S. Mail:                            By Commercial Carrier or in person:
Crunch Claims Administration            Crunch Claims Administration
P.O. Box ___                            Street Address
City, State ZIP                         City, State, ZIP

If you wish, you may use the Exclusion Request Form attached to this Notice to opt out of the settlement.

| 17. | If I do not exclude myself, can I sue Crunch for the same claims later? |
|---|---|

No. If you do not submit a valid and timely request for exclusion postmarked by_____, 2013 or deliver it by some other method so that it is received by the Claims Administrator no later than_____, 2013, you will be bound by all terms of the settlement and any Final Judgment entered in the Action, if the settlement is approved by the Court. The settlement and Final Judgment will include a full release of claims in this Action, which will prevent you from suing Crunch or any related persons or entities for the claims released by the settlement. If you have a pending lawsuit, speak to your lawyer in that case immediately.

| 18. | If I exclude myself, can I get money from this settlement? |
|---|---|

No. If you exclude yourself, you are asking not to be included in the settlement.

## THE LAWYERS REPRESENTING YOU

| 19. | Do I have a lawyer in this case? |
|---|---|

The Court has approved Scott Cole & Associates as Class Counsel to represent you and all Settlement Class Members. You do not need to hire your own lawyer because Class Counsel is working on your behalf. But, if you want to hire your own lawyer, you may do so at your own expense. For example, you can hire your own legal counsel to appear in Court for you if you want someone other than Class Counsel to speak for you.

| 20. | How will the lawyers and the Class Representative be paid? |

The amount of attorney's fees and costs awarded to the Class Counsel will be subject to the Court's discretion. You will not have to pay these fees and expenses separately. Class Counsel will request that the Court approve an award of attorneys' fees in an amount not to exceed Three Hundred and Fifty Thousand Thousand Dollars ($350,000.00), and litigation costs of up to Twenty Thousand Dollars ($20,000). Class Counsel will also request that the Class Representative receive an additional amount called an "Incentive Award." The amount of the Incentive Award will be subject to the Court's discretion, but in any event, will not exceed Seven Thousand Five Hundred Dollars ($7,500). This Incentive Award shall be paid out of and deducted from the Maximum Payment. Lastly, as part of the preliminary approval of the settlement, the Court has approved payment of claims administration expenses in the amount of Twenty Thousand Dollars ($20,000.00) to the Claims Administrator from the Maximum Payment.

### OBJECTING TO THE SETTLEMENT

| 21. | How do I object? |

If you think that the proposed settlement is unfair, inadequate or unreasonable, you can object to the proposed settlement. If you object, and if the Court approves the proposed settlement, then you will still receive a share of the settlement money, and you will be bound by the terms of the release as set forth in the answers to Questions 13 through 15 above, unless you exclude yourself from the settlement.

If you want to object to any part of the settlement, you must file a written objection with the Court stating with particularity the basis for the objection. If you intend to appear at the Final Fairness and Approval Hearing, whether in person or through counsel, you must include notice of that fact, and state the purpose for your appearance in the written objection. Any notice and/or written objection must be filed with the Court and copies thereof must be mailed or personally delivered to the attorneys listed below no later than _____, 2013.

All objections should be filed with the Clerk of Court no later than _____, 2013 at:

Superior Court of the State of California for the County of San Francisco
400 McAllister Street, Department 302
San Francisco, CA 94102

Copies of all documents filed with the Clerk of Court must be mailed or personally delivered to the following no later than _____, 2013:

| |
|---|
| Scott Edward Cole<br>Molly A. DeSario<br>Jessica L. Campbell<br>SCOTT COLE & ASSOCIATES, APC<br>1970 Broadway, Ninth Floor<br>Oakland, CA 94612 |
| Mark D. Kemple<br>GREENBERG TRAURIG, LLP<br>1840 Century Park East, Suite 1900<br>Los Angeles, CA 90067 |

If you object in the manner provided above, then you or your attorney may appear at the Final Approval Hearing, currently set for _____ __, 2013, at __:__ a.m. at Department 302 of the Superior Court of the State of California for the County of San Francisco, located at 400 McAllister Street, San Francisco, CA 94102. However, if you do not object in the manner provided above, your objection may be considered waived and you will not be able to make any other or later objection to the fairness, reasonableness or adequacy of the proposed settlement, the award of attorneys' fees and costs, or Class Representative's Incentive Award.

| | |
|---|---|
| 22. | What's the difference between objecting and excluding? |

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you do not want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing, the Honorable _____ presiding, on _____ __, 2013, at __:__ a.m. at Department 302 of the Superior Court of the State of California for the County of San Francisco, located at 400 McAllister Street, San Francisco, CA 94102, to determine whether the proposed settlement of the Action is fair, adequate, reasonable and should be finally approved by the Court, and whether the Action should be dismissed on the merits with prejudice. At the hearing, Class Counsel will speak on your behalf and answer any questions Judge _____ might have.

| | |
|---|---|
| 23. | May I attend the hearing and speak? |

Anyone may attend this hearing. If you are a Class Member and wish to speak, you must file and serve an objection as described above before you can speak at the hearing.

## GETTING MORE INFORMATION

| | |
|---|---|
| 24. | Are there more details about the settlement? |

This Notice summarizes the proposed settlement. For a more detailed statement of the matters involved in the Action, you may refer to the Joint Motion for Preliminary Approval of Class Action Settlement, and any other pleadings and papers filed in the Action, which may be inspected at the office of the Clerk of Court located at 400 McAllister Street, San Francisco, CA 94102, during regular business hours of each Court day. Or, you may contact Class Counsel (see contact information in Question 26 below).

| | |
|---|---|
| 25. | Can I read a copy of the settlement agreement? |

Yes. A copy of the settlement agreement may be found as part of the Joint Motion for Preliminary Approval of Class Action Settlement, which is available for your review at the office of the Clerk of Court at the address provided in Question 24 above, or you may contact Class Counsel (see contact information in Question 26 below).

| 26. | How do I contact Class Counsel to obtain additional information? |
|---|---|

All questions regarding this Notice and/or the settlement should be directed to your Class Counsel at:

Scott Edward Cole
Molly A. DeSario
Jessica L. Campbell
SCOTT COLE & ASSOCIATES, APC
1970 Broadway, Ninth Floor
Oakland, CA 94612

**PLEASE DO NOT CONTACT THE CLERK OF THE COURT, THE JUDGE, CRUNCH, OR
CRUNCH'S ATTORNEYS WITH INQUIRIES.**

# EXHIBIT 2

Crunch Claims Administration
c/o [Claims Administrator]
P.O. Box _____
City, State ZIP

### EXCLUSION OR OPT-OUT REQUEST FORM

Claim #
«First1» «Last1»
«c/o»
«Address 1» «Address2»
«City», «ST» «Zip» «Country»

*Rebecca Rothberg v. Crunch LLC and DOES 1-100*, Case No. Case No. CGC 12-519740

SUBMIT THIS FORM NOT LATER THAN _____, 2013 ONLY IF YOU WISH TO OPT OUT OF THE SETTLEMENT.

**DO NOT SUBMIT THIS EXCLUSION FORM IF YOU WISH TO RECEIVE MONEY FROM THE SETTLEMENT.**

I have reviewed the accompanying Notice of Class Action Settlement and understand that any person who worked as a non-exempt personal trainer, group fitness instructor or Pilates instructor employee at Crunch LLC ("Crunch") in California at any time from April 4, 2008 through [date of preliminary approval] is a Class Member in *Rebecca Rothberg v. Crunch LLC and DOES 1-100*, Case No. Case No. CGC 12-519740 (the "Action"). I understand that this settlement is intended to compensate such Class Members.

I understand that I may exclude myself from, or "opt out" of, the class settlement of the Action. I understand that, in any separate lawsuit, including the *Tyehimba v. Crunch* (Case No. CV-13-00225) action currently pending before the United States District Court of California, Northern District, I may receive nothing or less than I would have received if I had participated in the settlement. I understand that any separate lawsuit by me will be undertaken at my own expense and at my own risk, and that there is a deadline to pursue such claims known as the "statute of limitations." I understand that counsel for the class will not represent my interests if I opt out.

I understand that if I do not opt out, I will receive a payment if the class settlement of the Action is approved by the Court. *I understand that, by requesting to be excluded from the class settlement, I will receive no money from the settlement in accordance with the Settlement Agreement entered into by Plaintiff and Crunch in the Action.* No one has coerced or forced me to opt out; it is my own decision. I opt out of the settlement.

_____          _____
Printed Name                                                          Signature

_____          ( )_____
Date (mm/dd/yyyy)                                                  Telephone

_____
Mailing Address

_____          _____          _____
City                                                State                                Zip Code

__-__-__-__ (Last Four Digits of Social Security Number)

THIS FORM **MUST** BE POSTMARKED BY _____, 2013 OR, IF DELIVERED TO THE CLAIMS ADMINISTRATOR BY MEANS OTHER THAN UNITED STATES CERTIFIED MAIL, RECEIVED BY THE CLAIMS ADMINISTRATOR NOT LATER THAN _____, 2013 AT THE FOLLOWING ADDRESS:

By U.S. Mail:                                                 By Commercial Carrier or in person:
Crunch Claims Administration                        Crunch Claims Administration
c/o [Claims Administrator]                             c/o [Claims Administrator] Street Address
P.O. Box ___                                                   Street Address
City, State ZIP                                               City, State, ZIP

**YOU SHOULD KEEP A COPY OF THIS DOCUMENT FOR YOUR RECORDS. YOU MAY WISH TO MAIL IT RETURN RECEIPT REQUESTED.**

Exhibit B

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2                   FOR THE COUNTY OF SAN FRANCISCO
 3            BEFORE THE HONORABLE ERNEST H. GOLDSMITH, JUDGE
 4                            DEPARTMENT 613
 5                            ---oOo---
 6   REBECCA ROTHBERG,              )
     individually, and on behalf    )
 7   of all others similarly        )
     situated,                      )
 8             (                    )
                       Plaintiff,   )
 9                                   )
          vs.                       )No. CGC 12-519740
10                                   )
     CRUNCH LLC, NEFC Crunch        )
11   and AGT Crunch Acquisition     )
     Wind Down, LLC and             )
12   DOES 1-100, inclusive,         )
                                    )
13             Defendants.          )
14
15   _____
16             REPORTER'S TRANSCRIPT OF PROCEEDINGS
17             Wednesday, September 11, 2013
18
19
20
21
22
     Reported by:
23   Kenneth Brill, CSR 12797
24   Job No. 1724132
25   Pages 1 - 26
```

Page 1

```
 1    A P P E A R A N C E S :

 2

 3    For Plaintiff:

 4         SCOTT COLE & ASSOCIATES

 5         BY:  MOLLY DESARIO, ESQUIRE

 6         1970 Broadway, Ninth Floor

 7         Oakland, CA 94612

 8         (510) 891-9800

 9         mdesario@scalaw.com

10

11

12    For Defendants

13         GREENBERG TRAURIG

14         BY:  MARK D. KEMPLE, ESQUIRE

15         1840 Century Park East

16         Suite 1900

17         Los Angeles, CA 90067

18         (310) 586-7864

19         kemplem@gtlaw.com

20

21

22

23

24

25
```

Page 2

```
 1   A P P E A R A N C E S  (continued)

 2

 3   For Osa Tyehimba, Putative Class Member

 4              HUNT ORTMANN

 5              BY:   ALISON GIBBS, ESQUIRE

 6              301 North Lake Avenue

 7              7th Floor

 8              Pasadena, CA 91101

 9              (626) 440-5200

10              gibbs@huntortmann.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 3

```
1              PROCEEDINGS FOR SEPTEMBER 11, 2013

2          JUDGE ERNEST H. GOLDSMITH PRESIDING, DEPT. 613

3                         ---OOO---

4                        10:23 a.m

5              THE COURT:  Are the parties here on the Motion

6     for Preliminary Approval of Class Action?

7              MS. DESARIO:  Yes, we are.

8              MR. KEMPLE:  We are.

9              THE COURT:  All right.  So you have a

10    reporter.

11             MR. KEMPLE:  Yes, Your Honor.

12             THE COURT:  Okay.  This is action number

13    519740.  Rothberg versus Crunch LLC, et al.  And would

14    you state your appearances, please.

15             MS. DESARIO:  Molly Desario for Plaintiff

16    Rothberg and the putative class.

17             MR. KEMPLE:  Good morning, Your Honor, Mark

18    Kemple, I'm appearing on behalf of the defendants.

19             MS. GIBBS:  Good morning, Your Honor, Allison

20    Gibbs, appearing on behalf of Osa Tyehimba, the objector

21    putative class member.

22             THE COURT:  Well, I have -- I'm familiar with

23    this matter, I've reviewed the papers, and I'm in

24    agreement that it should be approved.  What does the

25    objector have to say about it?
```

Page 4

 1          MS. GIBBS:  Your Honor, a few issues.  As far

 2   as preliminary approval of the settlement at this stage,

 3   our position is that the release of the claims outside

 4   the scope of the operative Complaint, which is the

 5   Second Amended Complaint, is improper.  And I would say

 6   the case on point is Trotsky versus Los Angeles

 7   Federal -- Federation Savings & Loan Association.  That

 8   case dealt with a procedural posture right on point with

 9   this case.

10          In particular, there was a class action

11   brought or an action brought against a defendant

12   relating to three provisions involving a trustee,

13   arguing that the provisions were unlawful and were

14   seeking declaratory relief in that regard.

15          During the course of the litigation, one of

16   the provisions was dropped by the plaintiff from the

17   case without opposition from the defendant.  Thereafter,

18   a subsequent case action was filed against the same

19   defendant, solely on the basis of that particular

20   provision that was previously dropped, alleging the same

21   thing that it was an illegal provision.

22          And in that case, the defendant went back to

23   the first party who filed and offered settlement.  The

24   case ultimately settled and was subject to preliminary

25   approval by the Court.  The Court approved the

Page 5

1    settlement, despite the fact that the -- did not concede

2    that there was any benefit or value considered in

3    exchange for that release, despite the fact that the

4    release was specifically broad enough to include that

5    second provision that had previously been dropped from

6    the case.

7              It went up on appeal and the Court of Appeals

8    reversed the decision finding that the settlement was

9    outside the scope of the Amended Complaint and

10   plaintiffs could not settle the claims of the class of

11   plaintiffs they did not represent.

12             And so the Court cautioned in this particular

13   scenario, when you have a release that's trying to

14   release claims outside the scope of the action currently

15   pending in another litigation, to closely scrutinize

16   that type of settlement in order to determine whether or

17   not the named plaintiffs in the settled case are

18   adequately representing the interests of the class.  And

19   the Court had found they had not.

20             And I think that is exactly the scenario at

21   play here.  We have several claims.  We have -- not the

22   least of which is the FLSA claims that involve not only

23   the claims alleged in the Rothberg action which are

24   limited to off-the-clock claims, but a claim pursuing

25   miscalculation of the regular rate of pay for failure to

Page 6

1    include bonus, commission pay.

2           That claim does not exist in the Rothberg

3    action.   There's been no showing that either party went

4    back and recalculated what the actual rate of pay should

5    have been when including all the remuneration.

6    The only thing that they represented to this Court is

7    that they exchanged information as to the average rate

8    of pay, but that's not the claim at issue.   Here we're

9    talking about recalculating the rate of pay.

10          And again, that is a specific claim that

11   they're seeking to release under the FLSA, that claim,

12   if proven to be true, would be entitled to liquidated

13   damages, as the -- our papers reflect, FLSA is pretty

14   clear that you can't waive a plaintiff employee's right

15   to liquidated damages without there being a bona fide

16   dispute, in addition to claims for overtime wages,

17   unless there's been action brought under the FLSA

18   alleging overtime violations.

19          So again, we'd encourage the Court to review

20   Lynn's Food Store case and its progeny that reflect

21   that -- the non-waivable nature of FLSA claims, which

22   include both overtime and liquidated damages.

23          In addition, our position is that -- and,

24   quite frankly, the cases cited by the parties, most of

25   which dealt with res judicata issues, which is not

                                                      Page 7

```
 1    appropriately before this Court, and don't deal with the
 2    enforceability of --
 3             THE COURT:  I know there were objections about
 4    that.  I mean, it's appropriate -- that issue is
 5    appropriately in front of the Court.
 6             MS. GIBBS:  Well, in the sense that in those
 7    cases the Court was analyzing a binding judgment or
 8    release in a binding judgment to determine whether or
 9    not res judicata applies.
10             And if you review the court -- or the cases
11    noted, the courts in each of those cases actually
12    highlighted the fact that the plaintiff had not objected
13    or opposed or disputed the facts or the releases at
14    issue in the prior filed case at the time that the
15    plaintiff in that case was seeking approval.
16             And I would highlight in particular, aside
17    from the fact that the majority of the cases they cite
18    are out of circuit federal court decisions that are not
19    binding on this Court, they did cite the case of
20    Villacres versus ABM Industries.
21             And I would direct the Court's attention to
22    the court comments in holding that res judicata applied
23    in that case.  In particular, I believe I have it as
24    page 582-583 of that decision.  The court ultimately
25    held that res judicata applied for the very reason that
```

Page 8

1    putative class member objector Osa Tyehimba is opposing

2    the release at this stage, because they noted that

3    Villacres did not raise the unenforceability of the

4    release by including a release of PAGA claims which were

5    not pled in the action through objection, intervention,

6    or by way of appeal or opt out of the class.  And that's

7    why the Court held that --

8          THE COURT:  Tell me what is that you're

9    seeking.

10         MS. GIBBS:  Essentially, and the reason why I

11   noted the Villacres decision is because they -- the

12   court basically said, had they raised this issue at the

13   lower court level, then the court would have had an

14   opportunity to determine if there's a conflict of

15   interest among the named plaintiff and certain class

16   members, and a narrowing of the class may be appropriate

17   in the sense of approving only a narrow class based on

18   the claims actually pled in the action.

19         And so our position is that as to the claims

20   not pled or, you know, at this stage, provided any sort

21   of consideration or conceivable benefit in exchange for

22   the release, which would include the FLSA claim and the

23   miscalculation of the rate of pay, should be carved out

24   of the release, and a narrow class should apply, at

25   least at the preliminary approval stage.

Page 9

1          We've also reserved the right, you know, at

2     final approval to potentially object to whether or not

3     the -- as to the other claims it's fair and appropriate

4     because at this stage there has been no evidence as to

5     the value that was attached to these claims.

6          MR. KEMPLE:  Your Honor, may I?

7          THE COURT:  What does the moving party say?

8          MR. KEMPLE:  Thank you, Your Honor.  First of

9     all, we're at preliminary approval, of course.  Whatever

10    objections a class member wants to make are

11    appropriately directed to final approval.

12         In terms of there is no res judicata issue

13    here, of course there is a res judicata issue here.

14    This will be a judgment that will be entered, and the

15    question is:  Does it release FLSA claims on exactly the

16    same facts as alleged in the underlying case.

17         Every case to look at that issue has said, of

18    course it does, under basic doctrines of res judicata,

19    that's Klein, Kunkel, Valerio, a Ninth Circuit decision,

20    Villacres, California Court of Appeal, Gamble versus

21    General Foods, California Court of Appeal and Molina,

22    another district court case that we've cited, all of

23    these are in our briefs.

24         Every case to address this issue says of

25    course; otherwise, you would settle these claims and the

                                                    Page 10

1    next day the exact same claims would be brought under

2    federal law.

3          The Primary Right Doctrine says when you

4    settle something on the facts on the transaction at

5    issue, all claims, whether made or not made, are

6    extinguished by that settlement.  It's basic law applied

7    specifically in this context to defeat these assertions

8    which at any rate should be made at final approval, not

9    at preliminary approval, when the entire class can weigh

10   in on the issue.

11         The notion that we are somehow settling

12   primary rights outside what is pled in this pleading is

13   defeated at multiple levels.  First of all, the

14   settlement on its terms says it is only releasing claims

15   that were offered and advanced in the underlying

16   litigation.  Again, a claim is not whether it's labeled

17   federal or state law, it's the transaction in question.

18         As to the specific claims that she tries to

19   isolate -- and again, if there is an objection here,

20   it's for final approval, they are pled.  Meal and rest

21   breaks is pled, overtime violations are pled.  Indeed,

22   even at the most granular level, failure to calculate

23   the regular rate of pay is referenced in the SAC -- the

24   Second Amended Complaint at paragraph 6.

25         We are not trying to settle anything that was

Page 11

 1  not litigated voraciously, if that's the right --

 2  ferociously by plaintiff's counsel in the underlying

 3  case.

 4      We went to a mediation, prolonged.  David

 5  Rotman is top of the field.  We settled these claims.

 6  We exchanged enormous amounts of information as is all

 7  documented on all of these claims.  There is just

 8  nothing unusual here other than Ms. Gibbs and her client

 9  are trying to overturn the apple cart so that they can

10  be the party that settles with us.  But the fact is the

11  first filed action that's here before this Court is a

12  perfected valid settlement.

13      If Mr. Tyehimba has any objections, he should

14  be heard at final approval.  So for that reason, we'd

15  ask the Court for preliminary approval of the

16  settlement.

17      And by the way, there is no argument here that

18  the terms of the settlement are unfair or that the

19  amounts that are being paid are too low, or any of the

20  factors that are to be taken into account at this

21  juncture, those aren't the arguments that are being made

22  by the objector here.

23      So if I could answer any questions, I'd be

24  happy to.

25      THE COURT:  I think he's right.

Page 12

1           MS. GIBBS:  Well, I would clarify for the

2    record --

3           THE COURT:  Let me just say, I believe this is

4    an extremely comprehensive settlement.  I mean, you

5    characterized it as leaving out everything.  I haven't

6    seen that at all.

7           MS. GIBBS:  Well, that -- based on the -- the

8    motion papers and declarations produced, what is

9    missing -- and this is just to clarify that the position

10   is not that there's been any concession that the

11   settlement's fair, because we wouldn't be able to

12   determine that because the only information that they

13   provide the Court is as to the distribution.

14          There's been no information or evidence as to

15   what the total valuation or assessment of the settlement

16   claims are so then you can start determining whether or

17   not the distribution is fair.  So that information has

18   not been presented, and we did note that in our

19   objection papers.  And so we are reserving our right to

20   explore that later, potentially.

21          THE COURT:  Well, you can explore it later.

22          MS. GIBBS:  At final approval there is a

23   standard which requires that the parties, in particular

24   the plaintiffs representing the class, have to produce

25   information to properly assess the value of the claims

                                              Page 13

1    at issue.

2         So in -- for example, what were the estimates

3    in terms of the off-the-clock time?  We don't know what

4    that is.  All we know is what they're intending to pay

5    out for those claims.  So we don't know if that's fair

6    because we have nothing to measure it against at this --

7    at this particular stage.

8         THE COURT:  Well, it was -- it was certainly

9    negotiated.

10        MS. DESARIO:  It absolutely was negotiated,

11   Your Honor, and that's exactly why objections are

12   reserved for final approval.

13        THE COURT:  Yeah.

14        MS. GIBBS:  But at this stage, I'm just

15   clarifying for the record that that information has not

16   been provided and I think defendant's counsel had made

17   some representations that it's not being contested.  And

18   I just wanted to clarify for the record that that's not

19   the position of Mr. Tyehimba.

20        And more so, the repeated contention is that

21   we're essentially, or Osa Tyehimba is essentially trying

22   to take the overlapping claims and carve out a specific

23   claim going forward.  Since the very --

24        THE COURT:  I mean, isn't that the case?

25        MS. GIBBS:  As to the unpled and the dropped

Page 14

```
 1    claims.  So the claims that at this stage in the case --
 2    so, for example, a miscalculation of the regular rate of
 3    pay, it's untrue that there was a fact -- factual
 4    predicate for the miscalculation.
 5            In every Complaint where you're alleging
 6    overtime not being paid at the regular rate of pay in
 7    terms of an off-the-clock use, you put in that
 8    boilerplate language.  But if there is a specific
 9    contention that you're arguing that they didn't
10    calculate at the right rate of pay because they failed
11    to include all remuneration, that's a different subset.
12            THE COURT:  This is a heavily litigated case
13    and contentious as well in terms of the history of it,
14    the background of it.  This was an adversarial exercise,
15    and this is exactly the sort of process that gives
16    comfort, if you will, that the issues are covered.  This
17    is not a sweetheart deal.
18            I mean, it's one of the first things that the
19    Court looks at, you know, is this some kind of
20    cooked-together sweetheart deal in the plaintiff case,
21    and I just want to make that observation.  And I think
22    that sort of flies in the face of your -- of the thrust
23    of your argument, which is really what you're saying,
24    you're saying that they cooked this up, strongly
25    implying it's a sweetheart deal.  And there is nothing
```

Page 15

```
 1    to indicate that.
 2            In other words, you're saying that, well, they
 3    left out all -- all of these factors to the detriment of
 4    the class.  I don't see any of that.  Just the -- the
 5    whole issue of this case and looking at the pleadings,
 6    nobody got together to shortchange the class as far as I
 7    could see.
 8            Now, you could raise everything you want at
 9    final approval stage, but I'm just telling you what the
10    Court's strong impression is.  And it flies in the face
11    of what you're suggesting, because the thrust of what
12    you're suggesting is just what I mentioned.
13            MS. DESARIO:  Your Honor, if I could, our firm
14    has litigated a number of these cases against fitness
15    clubs involving this exact issue with the session rate
16    pay to fitness instructors and to personal trainers.
17    Our settlement numbers per work week or per session
18    value are in line with all of those other cases, and
19    that information will be presented to you at final
20    approval.
21            And I will also say that as for the overtime
22    claim that Ms. Gibbs is referring to, under federal law,
23    that is a spread.  So in these particular types of cases
24    where you've got people who are teaching classes or
25    doing personal training sessions, where they're not
```

Page 16

1   working 40 hours a week, they're working less than that,

2   that spread is calculated out over the hours.

3          So, for example, at Crunch, the instructors

4   are paid a much higher rate than the federal minimum

5   wage standard rate.  And so the overtime that Ms. Gibbs

6   is talking about under federal law is going to be a much

7   lower number --

8          THE COURT:  Because they work part-time.

9          MS. DESARIO:  Pardon?

10         THE COURT:  Because they work part-time.

11         MS. DESARIO:  Exactly.  And so those numbers

12  would actually be much smaller, that recovery would be

13  much smaller under the federal law than would be under

14  California law.  And I can assure you that in our

15  pleadings and in negotiations we have advocated the

16  position that all overtime rates should be calculated

17  under California law based on the regular session rate

18  and not some minimum wage rate.  So --

19         MS. GIBBS:  And I would just clarify that the

20  argument wasn't limited to federal.  It applied to the

21  miscalculation of the regular rate of pay claim under

22  both the Labor Code and the FLSA.

23         And again, all remuneration would not just be

24  the session rate, that would include nondiscretionary

25  bonus pay, commission pay, anything else, not just the

Page 17

1    session rate.

2              THE COURT:  You're getting a better deal than

3    they would in federal court.

4              MR. KEMPLE:  They are, and we've litigated

5    this.

6              THE COURT:  That just speaks so loudly about

7    this case.

8              MS. GIBBS:  Well, that, I guess that depends

9    in terms of what claims you're referencing.  And again,

10   our position was that the release was overly broad.

11   It's trying to release claims that weren't litigated,

12   weren't pled and, you know, as far as the evidence

13   produced, weren't given any conceivable benefit at this

14   stage in exchange for that release.

15             THE COURT:  I think I already stated my

16   observations that this was heavily litigated, and the --

17   it appears to me that the class members had vigorous

18   representation.  I don't think it's a close case at this

19   stage, so --

20             MR. KEMPLE:  Thank you, Your Honor.

21             THE COURT:  So I'm going to approve.

22             MR. KEMPLE:  Thank you, we've submitted a

23   Proposed Order.  We have an extra copy for the Court.

24             THE COURT:  Okay.

25             MR. KEMPLE:  I'll approach the clerk with

                                              Page 18

1    that.

2              THE COURT:  Have you shown it to Ms. Gibbs?

3              MS. DESARIO:  Your Honor, I have one more

4    request.  It's come to our attention that Ms. Gibbs'

5    office has been initiating contact with the putative

6    class members in this case, which are actually now class

7    members under the purview of our firm's leadership.

8              And I'm concerned that, well, for example, our

9    client, in fact, has received a letter from Ms. Gibbs'

10   office which I believe was probably a mass mailing that

11   was sent out to putative class members soliciting

12   participation in her lawsuit, which is currently stayed

13   in her court.

14             And I would ask, first of all, that we receive

15   the communication that was sent out, any and all

16   communications that were sent out to class members, and

17   who they were sent to, so that we can make sure that

18   there is no confusion about what's going on in this

19   other case.

20             And also, of course, to investigate that

21   Ms. Gibbs is not soliciting clients for the purpose of

22   gathering objections to a settlement that we believe is

23   fair for all the class members.

24             THE COURT:  So what do you want me to do?

25             MS. DESARIO:  I want you to order her to

                                              Page 19

1    produce the communications that she sent out to the

2    putative class, as well as identify who those recipients

3    were.

4              MS. GIBBS:  And just to comment --

5              THE COURT:  Any problem with that?

6              MS. GIBBS:  Well, initially, this issue was

7    raised last week, a few days ago, we responded to

8    Ms. Desario's request, inviting her to speak more

9    specifically about any communications that she was

10   alleging occurred that were improper.  And prior to

11   until this very moment of the Order, there was no

12   verified class, and so there is no attorney-client

13   relationship and --

14             THE COURT:  Well, there is now.

15             MS. GIBBS:  There is now.  However, there has

16   been no mailing that obviously has occurred since this

17   Order because the Order was just issued, and any

18   communications prior to a provisional certification of

19   this class are not -- well, Ms. Desario or her firm does

20   not have a attorney-client relationship with those class

21   members.

22             Going forward, that would be true.  And there

23   have been no solicitations.  Any potential class members

24   that we've spoken to, we've inquired as to whether or

25   not they are represented by Ms. Desario's firm.  That

Page 20

1    was not provided to us, no information about the

2    representation.  Ms. Desario or her firm would have had

3    to have a specific retainer agreement for that to be the

4    case, and our communications were limited to the FLSA

5    claims.

6         MS. DESARIO:  Your Honor, first of all, the

7    information that we're getting is that there was a

8    letter.  The letter was sent to our client.  So I don't

9    know how she got -- I don't know how Ms. Gibbs even got

10   our client's address, she hasn't been provided any

11   discovery in her case, her case is completely stayed,

12   she doesn't have the class list in her case, but somehow

13   she got our client's address and sent our client a

14   letter soliciting participation in her case.

15        To the extent that she says that there are

16   issues -- no issues going forward, I would respectfully

17   disagree.  Whatever information was sent out was sent

18   out clearly in the last couple of months while this

19   settlement was pending.

20        THE COURT:  Well, just send it to her.  Send

21   her a copy of what was sent.

22        MS. GIBBS:  If there was, this was news to me,

23   I was not apprised of the fact that there was a

24   letter -- any letter sent to her specific client.  If

25   that's the case, I can absolutely produce the letter

Page 21

```
 1   sent to her client.
 2           As to anybody else, she doesn't have an
 3   attorney-client relationship with.
 4           MS. DESARIO:  That's not actually true, Your
 5   Honor, we have a number of retainers with a number of
 6   the class members that we've spoken to --
 7           MR. NORMAN:  Which I've invited Ms. Desario to
 8   identify to me so that we can address the communications
 9   with those individuals; however, I have not been
10   apprised of those -- the nature of that relationship.  I
11   would have no knowledge of what -- who she has retainers
12   with.
13           MS. DESARIO:  Your Honor, there are two
14   concerns here.  First of all, I'm not going to divulge
15   the names of my client at this point to anyone, we have
16   an attorney-client privilege.
17           The first issue is confusion to the class
18   members.  So there are communications being sent out
19   about this other case in the midst of the settlement
20   they are about to receive now, a notice package, about
21   the settlement in our case.  So there's confusion, I
22   think, that will arise from the notice package being
23   sent out shortly after communications about this other
24   case seeking participation.  All right.  So --
25           THE COURT:  I think so too.  I think so too.
```

Page 22

1    Ms. Gibbs, just send her that material.

2              MS. GIBBS:  Well, in relation to -- and I just

3    want to understand the scope of the Court's Order.

4              THE COURT:  Well, you've been soliciting

5    people.  And they have a right to know, given -- I think

6    that the point is well made that this fosters confusion

7    on the part of class members.

8              MS. GIBBS:  I can represent to the Court that

9    the communication was several months ago, prior to any

10   staying issue in our case, and that's completely

11   inaccurate.  And again, without having any particular

12   individual represent to us that they have a retainer

13   with Ms. Desario's firm, there is no attorney-client

14   relationship.

15             THE COURT:  Well, they have it now.

16             MS. GIBBS:  Right now, going forward.

17             THE COURT:  Yeah.

18             MS. GIBBS:  Correct.

19             THE COURT:  I think that there's a -- there's

20   plenty of room for confusion here.  I don't see how

21   you're disadvantaged at all.

22             MS. GIBBS:  Okay.  Sure.

23             THE COURT:  Because some people will not know

24   what -- what lawsuit they're in.

25             MS. GIBBS:  Well, and that's -- and that's

                                              Page 23

```
 1    part of the issue.
 2              THE COURT:  We're not Philadelphia lawyers,
 3    and why go through an unnecessary dispute here?  It's
 4    not going to hurt -- it's not going to disadvantage you,
 5    it's not going to prejudice you.  Just let's -- let's
 6    head off any confusion people might have.  Okay.  Let me
 7    see the Order.
 8              MR. KEMPLE:  Thank you, Your Honor.
 9              THE COURT:  Now, this is the one that was in
10    the package?
11              MR. KEMPLE:  Yes, Your Honor.
12              MS. DESARIO:  Yes.
13              THE COURT:  I've reviewed it.  I've seen it.
14    We're going to put in a date.
15              MR. KEMPLE:  For final approval?
16              THE COURT:  Yes.
17              MR. KEMPLE:  Your Honor, I would suggest that
18    we set it for -- I would suggest that we set it about
19    three months out, Your Honor.  If we've miscalculated as
20    to the deadlines for notice and such and such, we'll
21    just come back to the Court for --
22              THE COURT:  To get a new Order.
23              MR. KEMPLE:  Get a new Order, but I believe
24    mid-December certainly would be sufficient.
25              THE COURT:  Okay.
```

Page 24

1           MS. DESARIO:  I would say the week of
2    December 9th, if that works for the Court.
3           THE COURT:  December 9th.
4           MS. DESARIO:  December 9th is great.  Thank
5    you, Your Honor.  Would that be at 10:00 a.m.?
6           THE COURT:  Yes.  Thanks, counsel.
7           MR. KEMPLE:  Thank you, Your Honor.
8           MS. GIBBS:  Thank you, Your Honor.
9           MS. DESARIO:  Thank you very much, Your Honor.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

                                            Page 25

```
 1    STATE OF CALIFORNIA         )

 2                                ) SS.

 3    COUNTY OF SAN FRANCISCO     )

 4

 5         I, KENNETH BRILL, Certified Shorthand Reporter and

 6    Temporary official Court Reporter of the Superior Court

 7    of the State of California, hereby certify:

 8              That the foregoing contains a true, full and

 9    Correct transcript of the proceedings given and had in

10    the Within-entitled matter, and was reported by me at

11    the time and place mentioned, and thereafter transcribed

12    by me into longhand typewriting, and that the same is a

13    correct transcript of the proceedings.

14

15                        DATED: September 12, 2013

16                        San Francisco, California

17

18

19         _____

20         Kenneth Brill, CSR#12797

21

22

23

24

25

                                             Page 26
```

[& - cases]

| & | |
|---|---|
| **&** 2:4 5:7 | |

| **1** | |
|---|---|
| **1** 1:25 | |
| **1-100** 1:12 | |
| **10:00** 25:5 | |
| **10:23** 4:4 | |
| **11** 1:17 4:1 | |
| **12** 26:15 | |
| **12-519740** 1:9 | |
| **12797** 1:23 26:20 | |
| **1724132** 1:24 | |
| **1840** 2:15 | |
| **1900** 2:16 | |
| **1970** 2:6 | |

| **2** | |
|---|---|
| **2013** 1:17 4:1 26:15 | |
| **26** 1:25 | |

| **3** | |
|---|---|
| **301** 3:6 | |
| **310** 2:18 | |

| **4** | |
|---|---|
| **40** 17:1 | |
| **440-5200** 3:9 | |

| **5** | |
|---|---|
| **510** 2:8 | |
| **519740** 4:13 | |
| **582-583** 8:24 | |
| **586-7864** 2:18 | |

| **6** | |
|---|---|
| **6** 11:24 | |
| **613** 1:4 4:2 | |
| **626** 3:9 | |

| **7** | |
|---|---|
| **7th** 3:7 | |

| **8** | |
|---|---|
| **891-9800** 2:8 | |

| **9** | |
|---|---|
| **90067** 2:17 | |

**91101** 3:8
**94612** 2:7
**9th** 25:2,3,4

**a**

**a.m** 4:4
**a.m.** 25:5
**able** 13:11
**abm** 8:20
**absolutely** 14:10
  21:25
**account** 12:20
**acquisition** 1:11
**action** 4:6,12 5:10
  5:11,18 6:14,23 7:3
  7:17 9:5,18 12:11
**actual** 7:4
**addition** 7:16,23
**address** 10:24 21:10
  21:13 22:8
**adequately** 6:18
**advanced** 11:15
**adversarial** 15:14
**advocated** 17:15
**ago** 20:7 23:9
**agreement** 4:24 21:3
**agt** 1:11
**al** 4:13
**alison** 3:5
**alleged** 6:23 10:16
**alleging** 5:20 7:18
  15:5 20:10
**allison** 4:19
**amended** 5:5 6:9
  11:24
**amounts** 12:6,19
**analyzing** 8:7
**angeles** 2:17 5:6
**answer** 12:23
**anybody** 22:2
**appeal** 6:7 9:6 10:20
  10:21
**appeals** 6:7
**appearances** 4:14

**appearing** 4:18,20
**appears** 18:17
**apple** 12:9
**applied** 8:22,25 11:6
  17:20
**applies** 8:9
**apply** 9:24
**apprised** 21:23
  22:10
**approach** 18:25
**appropriate** 8:4
  9:16 10:3
**appropriately** 8:1,5
  10:11
**approval** 4:6 5:2,25
  8:15 9:25 10:2,9,11
  11:8,9,20 12:14,15
  13:22 14:12 16:9,20
  24:15
**approve** 18:21
**approved** 4:24 5:25
**approving** 9:17
**arguing** 5:13 15:9
**argument** 12:17
  15:23 17:20
**arguments** 12:21
**aside** 8:16
**assertions** 11:7
**assess** 13:25
**assessment** 13:15
**associates** 2:4
**association** 5:7
**assure** 17:14
**attached** 10:5
**attention** 8:21 19:4
**attorney** 20:12,20
  22:3,16 23:13
**avenue** 3:6
**average** 7:7

**b**

**back** 5:22 7:4 24:21
**background** 15:14
**based** 9:17 13:7
  17:17

**basic** 10:18 11:6
**basically** 9:12
**basis** 5:19
**behalf** 1:6 4:18,20
**believe** 8:23 13:3
  19:10,22 24:23
**benefit** 6:2 9:21
  18:13
**better** 18:2
**binding** 8:7,8,19
**boilerplate** 15:8
**bona** 7:15
**bonus** 7:1 17:25
**breaks** 11:21
**briefs** 10:23
**brill** 1:23 26:5,20
**broad** 6:4 18:10
**broadway** 2:6
**brought** 5:11,11
  7:17 11:1

**c**

**c** 2:1 3:1
**ca** 2:7,17 3:8
**calculate** 11:22
  15:10
**calculated** 17:2,16
**california** 1:1 10:20
  10:21 17:14,17 26:1
  26:7,16
**cart** 12:9
**carve** 14:22
**carved** 9:23
**case** 5:6,8,9,17,18
  5:22,24 6:6,17 7:20
  8:14,15,19,23 10:16
  10:17,22,24 12:3
  14:24 15:1,12,20
  16:5 18:7,18 19:6
  19:19 21:4,11,11,12
  21:14,25 22:19,21
  22:24 23:10
**cases** 7:24 8:7,10,11
  8:17 16:14,18,23

[cautioned - doctrines]

cautioned   6:12
century   2:15
certain   9:15
certainly   14:8 24:24
certification   20:18
certified   26:5
certify   26:7
cgc   1:9
characterized   13:5
circuit   8:18 10:19
cite   8:17,19
cited   7:24 10:22
claim   6:24 7:2,8,10
  7:11 9:22 11:16
  14:23 16:22 17:21
claims   5:3 6:10,14
  6:21,22,23,24 7:16
  7:21 9:4,18,19 10:3
  10:5,15,25 11:1,5
  11:14,18 12:5,7
  13:16,25 14:5,22
  15:1,1 18:9,11 21:5
clarify   13:1,9 14:18
  17:19
clarifying   14:15
class   3:3 4:6,16,21
  5:10 6:10,18 9:1,6
  9:15,16,17,24 10:10
  11:9 13:24 16:4,6
  18:17 19:6,6,11,16
  19:23 20:2,12,19,20
  20:23 21:12 22:6,17
  23:7
classes   16:24
clear   7:14
clearly   21:18
clerk   18:25
client   12:8 19:9
  20:12,20 21:8,13,24
  22:1,3,15,16 23:13
client's   21:10,13
clients   19:21
clock   6:24 14:3 15:7
close   18:18

closely   6:15
clubs   16:15
code   17:22
cole   2:4
come   19:4 24:21
comfort   15:16
comment   20:4
comments   8:22
commission   7:1
  17:25
communication
  19:15 23:9
communications
  19:16 20:1,9,13
  21:4 22:8,18,23
complaint   5:4,5 6:9
  11:24 15:5
completely   21:11
  23:10
comprehensive   13:4
concede   6:1
conceivable   9:21
  18:13
concerned   19:8
concerns   22:14
concession   13:10
conflict   9:14
confusion   19:18
  22:17,21 23:6,20
  24:6
consideration   9:21
considered   6:2
contact   19:5
contains   26:8
contention   14:20
  15:9
contentious   15:13
contested   14:17
context   11:7
continued   3:1
cooked   15:20,24
copy   18:23 21:21
correct   23:18 26:9
  26:13

counsel   12:2 14:16
  25:6
county   1:2 26:3
couple   21:18
course   5:15 10:9,13
  10:18,25 19:20
court   1:1 4:5,9,12
  4:22 5:25,25 6:7,12
  6:19 7:6,19 8:1,3,5
  8:7,10,18,19,22,24
  9:7,8,12,13,13 10:7
  10:20,21,22 12:11
  12:15,25 13:3,13,21
  14:8,13,24 15:12,19
  17:8,10 18:2,3,6,15
  18:21,23,24 19:2,13
  19:24 20:5,14 21:20
  22:25 23:4,8,15,17
  23:19,23 24:2,9,13
  24:16,21,22,25 25:2
  25:3,6 26:6,6
court's   8:21 16:10
  23:3
courts   8:11
covered   15:16
crunch   1:10,10,11
  4:13 17:3
csr   1:23 26:20
currently   6:14
  19:12

**d**

d   2:14
damages   7:13,15,22
date   24:14
dated   26:15
david   12:4
day   11:1
days   20:7
deadlines   24:20
deal   8:1 15:17,20,25
  18:2
dealt   5:8 7:25
december   24:24
  25:2,3,4

decision   6:8 8:24
  9:11 10:19
decisions   8:18
declarations   13:8
declaratory   5:14
defeat   11:7
defeated   11:13
defendant   5:11,17
  5:19,22
defendant's   14:16
defendants   1:13
  2:12 4:18
department   1:4
depends   18:8
dept   4:2
desario   2:5 4:7,15
  4:15 14:10 16:13
  17:9,11 19:3,25
  20:19 21:2,6 22:4,7
  22:13 24:12 25:1,4
  25:9
desario's   20:8,25
  23:13
despite   6:1,3
determine   6:16 8:8
  9:14 13:12
determining   13:16
detriment   16:3
different   15:11
direct   8:21
directed   10:11
disadvantage   24:4
disadvantaged
  23:21
disagree   21:17
discovery   21:11
dispute   7:16 24:3
disputed   8:13
distribution   13:13
  13:17
district   10:22
divulge   22:14
doctrine   11:3
doctrines   10:18

Page 2

[documented - invited]

**documented** 12:7
**doing** 16:25
**dropped** 5:16,20 6:5
14:25

**e**

**e** 2:1,1 3:1,1
**east** 2:15
**either** 7:3
**employee's** 7:14
**encourage** 7:19
**enforceability** 8:2
**enormous** 12:6
**entered** 10:14
**entire** 11:9
**entitled** 7:12 26:10
**ernest** 1:3 4:2
**esquire** 2:5,14 3:5
**essentially** 9:10
14:21,21
**estimates** 14:2
**et** 4:13
**evidence** 10:4 13:14
18:12
**exact** 11:1 16:15
**exactly** 6:20 10:15
14:11 15:15 17:11
**example** 14:2 15:2
17:3 19:8
**exchange** 6:3 9:21
18:14
**exchanged** 7:7 12:6
**exercise** 15:14
**exist** 7:2
**explore** 13:20,21
**extent** 21:15
**extinguished** 11:6
**extra** 18:23
**extremely** 13:4

**f**

**face** 15:22 16:10
**fact** 6:1,3 8:12,17
12:10 15:3 19:9
21:23

**factors** 12:20 16:3
**facts** 8:13 10:16
11:4
**factual** 15:3
**failed** 15:10
**failure** 6:25 11:22
**fair** 10:3 13:11,17
14:5 19:23
**familiar** 4:22
**far** 5:1 16:6 18:12
**federal** 5:7 8:18
11:2,17 16:22 17:4
17:6,13,20 18:3
**federation** 5:7
**ferociously** 12:2
**fide** 7:15
**field** 12:5
**filed** 5:18,23 8:14
12:11
**final** 10:2,11 11:8,20
12:14 13:22 14:12
16:9,19 24:15
**finding** 6:8
**firm** 16:13 20:19,25
21:2 23:13
**firm's** 19:7
**first** 5:23 10:8 11:13
12:11 15:18 19:14
21:6 22:14,17
**fitness** 16:14,16
**flies** 15:22 16:10
**floor** 2:6 3:7
**flsa** 6:22 7:11,13,17
7:21 9:22 10:15
17:22 21:4
**food** 7:20
**foods** 10:21
**foregoing** 26:8
**forward** 14:23
20:22 21:16 23:16
**fosters** 23:6
**found** 6:19
**francisco** 1:2 26:3
26:16

**frankly** 7:24
**front** 8:5
**full** 26:8

**g**

**gamble** 10:20
**gathering** 19:22
**general** 10:21
**getting** 18:2 21:7
**gibbs** 3:5,10 4:19,20
5:1 8:6 9:10 12:8
13:1,7,22 14:14,25
16:22 17:5,19 18:8
19:2,4,9,21 20:4,6
20:15 21:9,22 23:1
23:2,8,16,18,22,25
25:8
**given** 18:13 23:5
26:9
**gives** 15:15
**go** 24:3
**going** 14:23 17:6
18:21 19:18 20:22
21:16 22:14 23:16
24:4,4,5,14
**goldsmith** 1:3 4:2
**good** 4:17,19
**granular** 11:22
**great** 25:4
**greenberg** 2:13
**gtlaw.com** 2:19
**guess** 18:8

**h**

**h** 1:3 4:2
**happy** 12:24
**head** 24:6
**heard** 12:14
**heavily** 15:12 18:16
**held** 8:25 9:7
**higher** 17:4
**highlight** 8:16
**highlighted** 8:12
**history** 15:13
**holding** 8:22

**honor** 4:11,17,19
5:1 10:6,8 14:11
16:13 18:20 19:3
21:6 22:5,13 24:8
24:11,17,19 25:5,7
25:8,9
**honorable** 1:3
**hours** 17:1,2
**hunt** 3:4
**huntortmann.com**
3:10
**hurt** 24:4

**i**

**identify** 20:2 22:8
**illegal** 5:21
**implying** 15:25
**impression** 16:10
**improper** 5:5 20:10
**inaccurate** 23:11
**include** 6:4 7:1,22
9:22 15:11 17:24
**including** 7:5 9:4
**inclusive** 1:12
**indicate** 16:1
**individual** 23:12
**individually** 1:6
**individuals** 22:9
**industries** 8:20
**information** 7:7
12:6 13:12,14,17,25
14:15 16:19 21:1,7
21:17
**initially** 20:6
**initiating** 19:5
**inquired** 20:24
**instructors** 16:16
17:3
**intending** 14:4
**interest** 9:15
**interests** 6:18
**intervention** 9:5
**investigate** 19:20
**invited** 22:7

[inviting - overlapping]

**inviting** 20:8
**involve** 6:22
**involving** 5:12 16:15
**isolate** 11:19
**issue** 7:8 8:4,14 9:12
  10:12,13,17,24 11:5
  11:10 14:1 16:5,15
  20:6 22:17 23:10
  24:1
**issued** 20:17
**issues** 5:1 7:25
  15:16 21:16,16

**j**

**job** 1:24
**judge** 1:3 4:2
**judgment** 8:7,8
  10:14
**judicata** 7:25 8:9,22
  8:25 10:12,13,18
**juncture** 12:21

**k**

**kemple** 2:14 4:8,11
  4:17,18 10:6,8 18:4
  18:20,22,25 24:8,11
  24:15,17,23 25:7
**kemplem** 2:19
**kenneth** 1:23 26:5
  26:20
**kind** 15:19
**klein** 10:19
**know** 8:3 9:20 10:1
  14:3,4,5 15:19
  18:12 21:9,9 23:5
  23:23
**knowledge** 22:11
**kunkel** 10:19

**l**

**labeled** 11:16
**labor** 17:22
**lake** 3:6
**language** 15:8
**law** 11:2,6,17 16:22
  17:6,13,14,17

**lawsuit** 19:12 23:24
**lawyers** 24:2
**leadership** 19:7
**leaving** 13:5
**left** 16:3
**letter** 19:9 21:8,8,14
  21:24,24,25
**level** 9:13 11:22
**levels** 11:13
**limited** 6:24 17:20
  21:4
**line** 16:18
**liquidated** 7:12,15
  7:22
**list** 21:12
**litigated** 12:1 15:12
  16:14 18:4,11,16
**litigation** 5:15 6:15
  11:16
**llc** 1:10,11 4:13
**loan** 5:7
**longhand** 26:12
**look** 10:17
**looking** 16:5
**looks** 15:19
**los** 2:17 5:6
**loudly** 18:6
**low** 12:19
**lower** 9:13 17:7
**lynn's** 7:20

**m**

**mailing** 19:10 20:16
**majority** 8:17
**mark** 2:14 4:17
**mass** 19:10
**material** 23:1
**matter** 4:23 26:10
**mdesario** 2:9
**meal** 11:20
**mean** 8:4 13:4 14:24
  15:18
**measure** 14:6
**mediation** 12:4

**member** 3:3 4:21
  9:1 10:10
**members** 9:16 18:17
  19:6,7,11,16,23
  20:21,23 22:6,18
  23:7
**mentioned** 16:12
  26:11
**mid** 24:24
**midst** 22:19
**minimum** 17:4,18
**miscalculated** 24:19
**miscalculation** 6:25
  9:23 15:2,4 17:21
**missing** 13:9
**molina** 10:21
**molly** 2:5 4:15
**moment** 20:11
**months** 21:18 23:9
  24:19
**morning** 4:17,19
**motion** 4:5 13:8
**moving** 10:7
**multiple** 11:13

**n**

**n** 2:1 3:1
**named** 6:17 9:15
**names** 22:15
**narrow** 9:17,24
**narrowing** 9:16
**nature** 7:21 22:10
**nefc** 1:10
**negotiated** 14:9,10
**negotiations** 17:15
**new** 24:22,23
**news** 21:22
**ninth** 2:6 10:19
**non** 7:21
**nondiscretionary**
  17:24
**norman** 22:7
**north** 3:6
**note** 13:18

**noted** 8:11 9:2,11
**notice** 22:20,22
  24:20
**notion** 11:11
**number** 4:12 16:14
  17:7 22:5,5
**numbers** 16:17
  17:11

**o**

**oakland** 2:7
**object** 10:2
**objected** 8:12
**objection** 9:5 11:19
  13:19
**objections** 8:3 10:10
  12:13 14:11 19:22
**objector** 4:20,25 9:1
  12:22
**observation** 15:21
**observations** 18:16
**obviously** 20:16
**occurred** 20:10,16
**offered** 5:23 11:15
**office** 19:5,10
**official** 26:6
**okay** 4:12 18:24
  23:22 24:6,25
**ooo** 1:5 4:3
**operative** 5:4
**opportunity** 9:14
**opposed** 8:13
**opposing** 9:1
**opposition** 5:17
**opt** 9:6
**order** 6:16 18:23
  19:25 20:11,17,17
  23:3 24:7,22,23
**ortmann** 3:4
**osa** 3:3 4:20 9:1
  14:21
**outside** 5:3 6:9,14
  11:12
**overlapping** 14:22

[overly - rest]

overly  18:10
overtime  7:16,18,22
  11:21 15:6 16:21
  17:5,16
overturn  12:9

**p**

p  2:1,1 3:1,1
package  22:20,22
  24:10
paga  9:4
page  8:24
pages  1:25
paid  12:19 15:6 17:4
papers  4:23 7:13
  13:8,19
paragraph  11:24
pardon  17:9
park  2:15
part  17:8,10 23:7
  24:1
participation  19:12
  21:14 22:24
particular  5:10,19
  6:12 8:16,23 13:23
  14:7 16:23 23:11
parties  4:5 7:24
  13:23
party  5:23 7:3 10:7
  12:10
pasadena  3:8
pay  6:25 7:1,4,8,9
  9:23 11:23 14:4
  15:3,6,10 16:16
  17:21,25,25
pending  6:15 21:19
people  16:24 23:5
  23:23 24:6
perfected  12:12
personal  16:16,25
philadelphia  24:2
place  26:11
plaintiff  1:8 2:3
  4:15 5:16 7:14 8:12
  8:15 9:15 15:20

plaintiff's  12:2
plaintiffs  6:10,11,17
  13:24
play  6:21
pleading  11:12
pleadings  16:5
  17:15
please  4:14
pled  9:5,18,20 11:12
  11:20,21,21 18:12
plenty  23:20
point  5:6,8 22:15
  23:6
position  5:3 7:23
  9:19 13:9 14:19
  17:16 18:10
posture  5:8
potential  20:23
potentially  10:2
  13:20
predicate  15:4
prejudice  24:5
preliminary  4:6 5:2
  5:24 9:25 10:9 11:9
  12:15
presented  13:18
  16:19
presiding  4:2
pretty  7:13
previously  5:20 6:5
primary  11:3,12
prior  8:14 20:10,18
  23:9
privilege  22:16
probably  19:10
problem  20:5
procedural  5:8
proceedings  1:16
  4:1 26:9,13
process  15:15
produce  13:24 20:1
  21:25
produced  13:8
  18:13

progeny  7:20
prolonged  12:4
properly  13:25
proposed  18:23
proven  7:12
provide  13:13
provided  9:20 14:16
  21:1,10
provision  5:20,21
  6:5
provisional  20:18
provisions  5:12,13
  5:16
purpose  19:21
pursuing  6:24
purview  19:7
put  15:7 24:14
putative  3:3 4:16,21
  9:1 19:5,11 20:2

**q**

question  10:15
  11:17
questions  12:23
quite  7:24

**r**

r  2:1 3:1
raise  9:3 16:8
raised  9:12 20:7
rate  6:25 7:4,7,9
  9:23 11:8,23 15:2,6
  15:10 16:15 17:4,5
  17:17,18,21,24 18:1
rates  17:16
really  15:23
reason  8:25 9:10
  12:14
rebecca  1:6
recalculated  7:4
recalculating  7:9
receive  19:14 22:20
received  19:9
recipients  20:2
record  13:2 14:15
  14:18

recovery  17:12
referenced  11:23
referencing  18:9
referring  16:22
reflect  7:13,20
regard  5:14
regular  6:25 11:23
  15:2,6 17:17,21
relating  5:12
relation  23:2
relationship  20:13
  20:20 22:3,10 23:14
release  5:3 6:3,4,13
  6:14 7:11 8:8 9:2,4
  9:4,22,24 10:15
  18:10,11,14
releases  8:13
releasing  11:14
relief  5:14
remuneration  7:5
  15:11 17:23
repeated  14:20
reported  1:22 26:10
reporter  4:10 26:5,6
reporter's  1:16
represent  6:11 23:8
  23:12
representation
  18:18 21:2
representations
  14:17
represented  7:6
  20:25
representing  6:18
  13:24
request  19:4 20:8
requires  13:23
res  7:25 8:9,22,25
  10:12,13,18
reserved  10:1 14:12
reserving  13:19
respectfully  21:16
responded  20:7
rest  11:20

[retainer - versus]

retainer  21:3 23:12
retainers  22:5,11
reversed  6:8
review  7:19 8:10
reviewed  4:23 24:13
right  4:9 5:8 7:14
  10:1 11:3 12:1,25
  13:19 15:10 22:24
  23:5,16
rights  11:12
room  23:20
rothberg  1:6 4:13
  4:16 6:23 7:2
rotman  12:5

**s**

s  2:1 3:1
sac  11:23
san  1:2 26:3,16
savings  5:7
saying  15:23,24
  16:2
says  10:24 11:3,14
  21:15
scalaw.com  2:9
scenario  6:13,20
scope  5:4 6:9,14
  23:3
scott  2:4
scrutinize  6:15
second  5:5 6:5 11:24
see  16:4,7 23:20
  24:7
seeking  5:14 7:11
  8:15 9:9 22:24
seen  13:6 24:13
send  21:20,20 23:1
sense  8:6 9:17
sent  19:11,15,16,17
  20:1 21:8,13,17,17
  21:21,24 22:1,18,23
september  1:17 4:1
  26:15
session  16:15,17
  17:17,24 18:1

sessions  16:25
set  24:18,18
settle  6:10 10:25
  11:4,25
settled  5:24 6:17
  12:5
settlement  5:2,23
  6:1,8,16 11:6,14
  12:12,16,18 13:4,15
  16:17 19:22 21:19
  22:19,21
settlement's  13:11
settles  12:10
settling  11:11
shortchange  16:6
shorthand  26:5
shortly  22:23
showing  7:3
shown  19:2
similarly  1:7
situated  1:7
smaller  17:12,13
solely  5:19
solicitations  20:23
soliciting  19:11,21
  21:14 23:4
sort  9:20 15:15,22
speak  20:8
speaks  18:6
specific  7:10 11:18
  14:22 15:8 21:3,24
specifically  6:4 11:7
  20:9
spoken  20:24 22:6
spread  16:23 17:2
ss  26:2
stage  5:2 9:2,20,25
  10:4 14:7,14 15:1
  16:9 18:14,19
standard  13:23 17:5
start  13:16
state  1:1 4:14 11:17
  26:1,7
stated  18:15

stayed  19:12 21:11
staying  23:10
store  7:20
strong  16:10
strongly  15:24
subject  5:24
submitted  18:22
subsequent  5:18
subset  15:11
sufficient  24:24
suggest  24:17,18
suggesting  16:11,12
suite  2:16
superior  1:1 26:6
sure  19:17 23:22
sweetheart  15:17,20
  15:25

**t**

take  14:22
taken  12:20
talking  7:9 17:6
teaching  16:24
tell  9:8
telling  16:9
temporary  26:6
terms  10:12 11:14
  12:18 14:3 15:7,13
  18:9
thank  10:8 18:20,22
  24:8 25:4,7,8,9
thanks  25:6
thing  5:21 7:6
things  15:18
think  6:20 12:25
  14:16 15:21 18:15
  18:18 22:22,25,25
  23:5,19
three  5:12 24:19
thrust  15:22 16:11
time  8:14 14:3 17:8
  17:10 26:11
top  12:5
total  13:15

trainers  16:16
training  16:25
transaction  11:4,17
transcribed  26:11
transcript  1:16 26:9
  26:13
traurig  2:13
tries  11:18
trotsky  5:6
true  7:12 20:22 22:4
  26:8
trustee  5:12
trying  6:13 11:25
  12:9 14:21 18:11
two  22:13
tyehimba  3:3 4:20
  9:1 12:13 14:19,21
type  6:16
types  16:23
typewriting  26:12

**u**

ultimately  5:24 8:24
underlying  10:16
  11:15 12:2
understand  23:3
unenforceability
  9:3
unfair  12:18
unlawful  5:13
unnecessary  24:3
unpled  14:25
untrue  15:3
unusual  12:8
use  15:7

**v**

valerio  10:19
valid  12:12
valuation  13:15
value  6:2 10:5 13:25
  16:18
verified  20:12
versus  4:13 5:6 8:20
  10:20

**[vigorous - yeah]**

**vigorous**  18:17
**villacres**  8:20 9:3,11
  10:20
**violations**  7:18
  11:21
**voraciously**  12:1
**vs**  1:9

**w**

**wage**  17:5,18
**wages**  7:16
**waivable**  7:21
**waive**  7:14
**want**  15:21 16:8
  19:24,25 23:3
**wanted**  14:18
**wants**  10:10
**way**  9:6 12:17
**we've**  10:1,22 18:4
  18:22 20:24,24 22:6
  24:19
**wednesday**  1:17
**week**  16:17 17:1
  20:7 25:1
**weigh**  11:9
**went**  5:22 6:7 7:3
  12:4
**wind**  1:11
**words**  16:2
**work**  16:17 17:8,10
**working**  17:1,1
**works**  25:2

**y**

**yeah**  14:13 23:17

Exhibit C

## Kemple, Mark D. (Shld-LA-LT-Labor-EmpLaw)

| | |
|---|---|
| **From:** | Kemple, Mark D. (Shld-LA-LT-Labor-EmpLaw) |
| **Sent:** | Thursday, August 01, 2013 1:12 PM |
| **To:** | 'Alison Gibbs'; mdesario@scalaw.com |
| **Cc:** | Farrell, Ashley (Assoc-LA-Labor-EmpLaw) |
| **Subject:** | Rothberg v. Crunch |

Alison, We had intended that a courtesy copy be sent to you when it was first filed. Apparently, in my absence (I was on vacation when this was filed), my secretary failed to do so. I'll fed ex you a copy for delivery tomorrow. I reiterate however, that you and your client, Mr. Tyehimba, are not a party to this action, and therefore have no standing to file briefs in this matter. Nor do you represent any party to this action. If a class were certified in this action, and if your client then chose not to opt-out and thereby became a party (though we all know that he would opt-out), then your client would be a party and in a position to file documents with the Court in this action, at which time he could be heard on an equal footing with all other newly joined class members. None of that has happened. This is presently an action between Ms. Rothberg and my clients only. If a class is certified and your client joins it, only then would he be a party. I note then when last you attempted to file a brief as a non-party in this action, the Clerk rejected it, and refused to accept it. You nonetheless then improperly took that unfiled document to the department scheduled to hear the matter, and lodged that unfiled document with that department, all without notice to us and without advising that Department in which you lodged the document that the document had not been filed. We ask that you do not again engage in such conduct, and reserve all rights should you attempt to do so. Regards, Mark

Mark D. Kemple
Shareholder
Greenberg Traurig, LLP  | 1840 Century Park East Suite 1900  | Los Angeles, CA  90067-2121 Tel 310.586.7864  | Fax 310.586.0264  | Cell 949.294.2837 kemplem@gtlaw.com | www.gtlaw.com A 2011 LAW360 EMPLOYMENT GROUP OF THE YEAR

-----Original Message-----
From: Alison Gibbs [mailto:gibbs@huntortmann.com]
Sent: Thursday, August 01, 2013 12:52 PM
To: mdesario@scalaw.com; Kemple, Mark D. (Shld-LA-LT-Labor-EmpLaw)
Subject: RE: Rothberg v. Crunch

Molly/Mark:

I have not received any response from either of you regarding my request for a copy of the parties motion for preliminary approval. Molly I tried to follow-up with you telephonically this morning, but was sent to your voicemail. You previously told me that I would be served with the motion.  I am not sure why that did not happen.

Nevertheless, due to some backlog at the filing department the motion has not been posted in the system yet so I am unable to get a copy of the motion directly from the Court in time to review it before the opposition deadline next week. Please email me a copy of the motion papers, otherwise, I will be forced to address the issue with the Court.

Thank you,
Alison

Alison C. Gibbs
Associate
Hunt Ortmann Palffy Nieves Darling & Mah, Inc.

301 North Lake Avenue, 7th Floor
Pasadena, CA 91101
phone 949-335-3500 | fax 949-251-5111 | www.huntortmann.com -----Original Message-----
From: Alison Gibbs
Sent: Wednesday, July 31, 2013 12:23 PM
To: mdesario@scalaw.com
Cc: kemplem@gtlaw.com; jcampbell@scalaw.com; farrella@gtlaw.com
Subject: Rothberg v. Crunch

Hi Molly:

After the July 9th hearing you indicated that you would serve me with a copy of the renewed motion for preliminary approval of the class action settlement.  I noticed that the parties filed their motion on July 24th.  I never received a copy of the motion.  Can one of you please email it to me.  Thank you.

Regards,
Alison Gibbs

Exhibit D



**Hunt Ortmann**

CALL US TOLL FREE
**1-855-222-2298**

## Welcome to the Crunch Fitness Class Action Website



**Tyehimba et al. v. Crunch LLC et al.**

### Tyehimba et al. v. Crunch LLC et al.,
### Case No. CV 13-00225 SI, U.S. District Court,
### Northern District of California
### (Last Updated On February 25, 2013)

## What Is This Class Action About?

On January 16, 2013, Hunt Ortmann Palffy Nieves Darling & Mah ("Hunt Ortmann") filed a class action lawsuit on behalf of hourly paid employees who work or worked at any Crunch fitness and health club in California and throughout the United States from January 16, 2009 through entry of judgment.

Plaintiff is seeking to recover for all hourly-paid club employees' unpaid wages for all hours worked, including overtime pay; pay for failing to provide employees with uninterrupted 30-minute meal periods in the first 5 hours of their shift; pay for failing to authorize/permit employees to take uninterrupted-10 minute rest periods; reimbursement of expenses employees were required to pay in order to carry out their job duties and other related relief under various California wage and hour laws ("California Class Action"). The lawsuit also asserts claims for unpaid overtime wages and liquidated damages under the Fair Labor Standards Act ("FLSA Collective Action").

## What Is The Current Status Of The Case?

The lawsuit was filed on January 16, 2013 against Crunch LLC, New Evolution Fitness Company LLC, and New Evolution Ventures LLC ("Defendants"). Defendants have not yet responded to the complaint.

## How To Get Involved:

If you are a current or former employee of Crunch and would like to learn more about your potential rights under this lawsuit, please contact Alison Gibbs, Esq. toll at 1-855-222-2298 or by email at gibbs@huntortmann.com. By providing us with your contact information, we can keep you up to date on the status of this case and your potential claims. All inquiries will be kept confidential.

**\*\*If you wish to seek recovery under the FLSA collective action, you MUST submit a Consent to Join form and become a plaintiff in the Action. The amount of time you can recover for unpaid wages under the FLSA is 2-3 years from the date this form is filed with the Court. Every day that goes by without this form on file with the Court can substantially affect the amount of your potential claim. If you would like to preserve your claims for unpaid wages under federal law, it is important that you contact us right away at 1.855.222.2298.**

## Contact Us:

Name:

Email Address:

Message:

**dj85ff**

Enter the code above here :

Can't read the image? click here to refresh    Submit

**ALISON C. GIBBS**
Direct Dial: (626) 440-5200
E-mail: gibbs@huntortmann.com
3732.029

May 23, 2013

## CONFIDENTIAL COMMUNICATION

        Re:    **Tyehimba et al. v. Crunch LLC, et al.**
                 USDC Case No. 13CV00225 SI

Dear _____ :

This letter is to advise you that the law firm of Hunt Ortmann Palffy Nieves Darling & Mah, Inc. ("Hunt Ortmann") represents the above-referenced plaintiff in a potential collective action lawsuit against Crunch LLC (and other related entities) to recover current and former hourly employees' unpaid wages. The federal lawsuit was filed on January 16, 2013 in the California Northern District Court in San Francisco, California. The lawsuit was brought on behalf of hourly paid employees who worked at a Crunch Fitness health clubs nationwide at any time from January 16, 2010 to the present time.[1] This lawsuit applies to all fitness trainers and/or instructors, front desk employees, membership sales personnel and similar hourly paid positions, at Crunch fitness clubs throughout the United States at any time after January 16, 2010 up to the present.

The lawsuit seeks to recover employees' minimum wages and overtime wages under the Federal Labor Standards Act ("FLSA") on behalf of all hourly-paid club employees. Plaintiff alleges that Crunch's policies were such that employees were encouraged not to record hours worked on their time records and therefore employees were not paid for this time worked "off-the-clock" which if included in their work time, would have resulted in employees working more than 40 hours per week and thereby entitling them to overtime pay.

Based on our investigation, hourly employees have reported that they were not paid by Defendants for time spent working on session related activities, which includes but is not limited to, time spent "programming" (i.e. creating a member-specific program tailored to meet the

---

[1] California law requires attorneys to inform prospective clients that this communication may be considered a solicitation for legal services. (See California Rules of Professional Conduct 1-400).

554454.1 AGUTIERREZ 3732.029

301 North Lake Avenue, 7th Floor • Pasadena, CA 91101-5118 • Voice: 626-440-5200 • Fax: 626-796-0107 • www.huntortmann.com

May 23, 2013
Page 2

member's health and fitness needs) for Crunch fitness club members; for time spent traveling to training meetings and for time worked before and beyond their scheduled shifts. Our investigation has also revealed that Crunch employees work through meal breaks which was not recorded on their time records and resulted in work in excess of 40 hours a week entitling them to overtime pay. Plaintiff also alleges he and other potential collective members were required by Crunch to attend certification or continuing education programs as a condition of their employment yet they were not compensated for this time nor were they compensated for the costs of maintaining required certifications. In addition, Plaintiff alleges bonus and commission pay were not included in the calculation of overtime pay resulting in an underpayment of compensation. This is just a summary of Plaintiff's allegations. Crunch has denied liability in this matter.

**Your Potential Rights Under the Lawsuit:**

In order to participate in a collective action seeking recovery under the Federal Labor Standards Act, individual employees, including former employees, must become plaintiffs to the action. **Under federal law, if you wish to participate in this lawsuit and recover any potential monetary damages awarded in this case, you MUST submit a Consent to Join form and become a plaintiff in the lawsuit. Further, the amount of time you can recover for unpaid wages is 2-3 years from the date the Consent to Join is filed with the Court. Therefore, every day that goes by without this document on file with the court can substantially affect the amount of your claim.** Please be further advised that you have the right to seek the advice of an attorney of your own choice.

If you would like to participate in this lawsuit, please sign an return the enclosed Consent to Join and contact information forms to attorney Alison C. Gibbs at 301 North Lake Avenue, 7th Floor, Pasadena, CA 91101-5118. You may also fax the forms to (626) 796-0107 or email them to gibbs@huntortmann.com. If you would like additional information regarding your legal rights and your potential unpaid wages claim or if you know of other employees who would like information, please do not hesitate to contact Alison C. Gibbs at (855) 222-2298. More information about the case can also be found at www.crunchfitnessclassaction.com. All inquiries are confidential.[2]

Very truly yours,

ALISON C. GIBBS

_____

[2] The information you provide will be treated by our firm as confidential. It is unlawful for an employer to retaliate against an employee for their participation in a lawsuit against the employer.

554454.1 AGUTIERREZ 3732.029